## Given *against* Albert.

The inference of a witness, drawn from facts and circumstances within his knowledge, is inadmissible as evidence.

A paper purporting to have been made at a certain place, is not admissible as evidence of the fact that the person who executed it was at that place at the date of the paper.

A defendant is not made a competent witness by the fact of his having been discharged as a bankrupt after the suit was brought, especially if sued as an executor.

In an action of debt against two defendants, charging them as partners in merchandising, an agreement between them, made prior to the time when the plaintiff's cause of action arose, by which the merchandise was sold by one to the other, is competent evidence to disprove the partnership.

All the members of a firm are liable for goods sold to either for the use of the firm, although the existence of the partnership were not known to the vendor. So also would they be liable if they induced the vendor to believe a partnership existed, and he sold the goods on the faith of their assertions although in fact there was no such partnership. But a direction to the vendor by one, to charge the goods either to him or another at his option, does not amount to an assertion of partnership such as will charge them jointly.

Upon the death of a joint defendant, the cause must be tried against the survivor; there can be no joinder of the personal representatives of the deceased and the survivor.

ERROR to the Common Pleas of ~Cumberland~ county.

This was an action of debt originally brought by Jacob Albert and John R. Moore, trading in the name of Jacob Albert & Co., against Samuel Given and James Given, trading in the name of Samuel Given. During the pendency of the action, James Given died; and his executors, Samuel Given, Robert Given and Jacob Ritner, were voluntarily substituted as defendants. The plaintiffs' claim was founded upon a book account for merchandise, alleged to have been sold and delivered to the defendants. To prove the sale and delivery, and also to establish the allegation of partnership between Samuel and James Given, the plaintiffs gave the following evidence:

John Wordebaugh sworn. "I was in the capacity of clerk to Jacob Albert & Co. from 1826. This entry was made by Mr Moore, and finished by myself, for goods laid off by Mr James Given, dated 9th November 1829. That is the original entry. I was present during the time of the purchase of the goods. The bill for the goods was commenced by another clerk, who is now dead, and finished by myself.

Entry of 9th November 1829, in the name of Samuel Given, for merchandise, amounting to ........................................... $213.88
Entry of 2d April 1830, in the name of Samuel Given, amounting to ...   74.57

[Given v. Albert.]

I was present when James Given was about to lay these goods off. Was not present during the whole conversation which passed between him and Mr Albert; but when Mr G. was about purchasing his goods, he produced a memorandum book, and when that was produced I came forward. Albert asked James Given to whom the goods should be charged. His answer was, ' you may charge them either to me or to Samuel, it is immaterial which,' or words to that effect. This was before the goods were laid off. This was the first lot of goods. Don't know who was present at the laying off of the second lot. After the goods were laid off by James Given, Albert called my attention to the fact of the conversation of James Given, in reference to the charge to James or Samuel. He directed me to recollect it."

The plaintiffs then offered in evidence the deposition of Nehemiah Stockley, as follows:

" In September 1829 I was in Carlisle, and was endeavouring to effect a sale of drugs on account of the Messrs Moores, as their agent. In the course of the same day, I met in the square Samuel Given, between whom and myself some conversation took place on the subject of dye-stuffs. He also referred me to his father, and desired me to call in the evening at the store. I called and became acquainted with James G. the father, with whom I had much conversation relative to opening a trade between him and the Messrs Moores. We went into an examination of the prices of such drugs and dye-stuffs he said they would require. He took a list of them, and attached the prices to the different articles. He declined ordering anything at that time, because he said they were not entirely ready to use them, but that they would be in a short time. I remember that he told me that one of his sons was to manage the factory, and the other was to continue the store in town; but the whole course of his remarks led me directly to the inference that he himself was the real owner of both establishments, and that the sons were associated with him for the purpose, perhaps, of giving them better standing in society, and of putting them forward in business."

The defendants objected to this, 1. Because the witness testified to a conversation about dye-stuffs for a factory, and not about the subject-matter of the action. 2. The inference of a witness is not competent to go to a jury. The court overruled the objections, and sealed an exception.

The plaintiffs then offered in evidence several letters written by James Given to different individuals, not parties to this suit, such as the following:

" A person was here from your house some time ago, who was anxious to furnish us with dye-stuffs for the carpet factory. Our dyer has not yet arrived, but is daily expected from Hudson, when we shall be prepared to make purchase. The borax he stated at

[Given v. Albert.]

18 cents. We will be happy to be supplied in your city, if the quality and terms will answer.

For SAM'L GIVEN,

*28th September* 1829. JAMES GIVEN."

The defendants then offered in evidence the ledger of the hardware store kept in Carlisle, with the agreement written in it between James Given and Samuel Given, transferring that store to Samuel, on the 1st of October 1826:

1826, *October 1st.* It is mutually agreed between the undersigned, James Given and Samuel Given, that the said Samuel takes into his possession, and exercises free right and title to all the goods now in the store of the said James Given; and the said Samuel agrees to pay and discharge all the city debts due by the said James, either in Philadelphia or Baltimore. The said James also sets over to the said Samuel all the book-accounts now due in the store books, for the purpose of more enabling the said Samuel to pay and discharge the debts due by the said James; and the said Samuel is to continue the business in his own name hereafter, and at his own risk, in profit or loss. Given under our hands the day and year above written. JAMES GIVEN,

SAM'L GIVEN.

Witness—ROBERT GIVEN.

The plaintiff objected, 1. That it was not evidence, being mere declarations between the parties, defendants in the suit. 2. Because, when men induce others to part with their goods, they cannot show that there is no partnership. 3. The agreement is written in the last page of a ledger; and written, signed and witnessed by the parties to this suit, the defendants. The evidence was rejected by the court, and the defendants excepted.

The defendants then gave in evidence the day-book of Samuel Given, kept in the store at Carlisle, showing entries made in it on the 7th, 9th, 10th, 11th and 12th of November 1829, by James Given, being before, at and after the time when Wordebaugh testified James Given was in Baltimore engaged in purchasing the goods.

The defendants then offered in evidence a note of Samuel Given to Peabody, Riggs & Co., dated at Baltimore on the 9th November 1829, with proof that it was sent here for collection; and this for the purpose of showing that Samuel Given was in Baltimore at that date; but it was overruled, and the defendants excepted.

The defendants offered Samuel Given as a witness, and first offered his evidence of a final discharge under the bankrupt law, dated 26th November 1842; but he was objected to on the ground that he was interested, and was sued as one of the executors, and that he was liable for the costs of the term accruing since his discharge. The court rejected the witness, and the defendants excepted.

[Given v. Albert.]

The defendants then, by leave of the court, added the plea of the final discharge of Samuel Given as a bankrupt, and again offered him as a witness; but he was again rejected, and exception taken by the defendants.

The court were requested to charge upon the following points:

1. In this action of assumpsit against Samuel Given and the executors of James Given deceased, the plaintiffs cannot recover.

2. The plaintiffs having charged their goods to Samuel Given alone, is strong and powerful evidence that they sold them to Samuel Given alone; and they cannot avoid the effect of such entries, except by clear and satisfactory proof that James Given was then a partner, and that they were ignorant of that fact.

3. That the letters of James Given, given in evidence by the plaintiffs, do not in their form, expression or substance, create any liability on his part, as a partner of Samuel Given, either to the persons to whom they were written, or to the plaintiffs in this cause.

4. If the jury believe that James Given advanced money to his son Samuel, and put him in possession of goods, to enable him to do business for himself, and had no other interest in the business than a father naturally has for his son's success, the plaintiffs cannot recover in this suit.

5. There can be no recovery at all in this action against either of the defendants, unless there be a recovery against all of them.

The court thus answered the plaintiffs' points:

1. We cannot instruct you as here requested. The liabilities of these parties were fixed, we think, at the death of Mr Given. The voluntary appearance of his executors to this suit, and joining themselves with Samuel Given in the trial of it, without any adverse proceeding upon the part of the plaintiffs to bring them in— going on thus far in the trial of the cause upon its merits—the frequency with which proceedings of this kind are sustained in chancery, all induce us to answer negatively this proposition.

2. " The plaintiffs having charged their goods to Samuel Given alone, is strong evidence that they sold them to Samuel alone; and they cannot avoid the effect of such entries, except by satisfactory proof that James Given was then a partner." If he was, and so believed by the jury from the whole evidence in the cause to have been, whether the plaintiffs were ignorant of it or not, would not change his liability, particularly if you are satisfied the goods were purchased by James Given under the circumstances detailed in evidence by the witness, who says he was present when they were laid off.

3. This point involves questions of fact, in connection with the other evidence in the cause, which must be determined by the jury, and not by the court. To you, therefore, we refer the contents of these letters, in connection with all the other evidence in the cause, and leave for your determination the question, whether this

partnership existed at the date of these purchases or not. With this reference of the facts to you, we decline giving the instruction desired.

4, 5. The law is as here stated.

Errors assigned :

In admitting the testimony of Stockley.

In admitting the letter of 28th September 1829.

In rejecting the evidence of the agreement of sale of the store by James to Samuel Given, in 1826.

In rejecting the evidence of the note of Samuel Given, of the 9th of November 1829, to Peabody, Riggs & Co., and the evidence accompanying the offer.

In rejecting Samuel Given as a witness.

In their answer to the defendants' 1st, 2d and 3d points.

*Watts* and *Alexander*, for plaintiff in error, as to the admissibility of a bankrupt defendant as a witness, cited 2 *Term Rep.* 496; 4 *Watts & Serg.* 130; that a surviving defendant, and the personal representatives of a deceased one, could not be joined, 7 *Serg. & Rawle* 363; 1 *Chit. Pl.* 30; 8 *Serg. & Rawle* 356.

*Graham* and *Biddle*, contra, as to the admissibility of the witness, cited 5 *Law Lib.* 111; *Cary on Part.* 276; 7 *Taunt.* 599; 1 *Moore* 332; that the parties were rightly joined, 1 *Binn.* 123; 16 *Serg. & Rawle* 418; 1 *Rawle* 217.

The opinion of the Court was delivered by

SERGEANT, J.—A number of errors have been assigned in relation to matters of evidence and the charge of the court, each of which it is necessary to notice in detail.

The first error is in the admission of the deposition of Nehemiah Stockley, which was objected to in whole and in part. The objection to the whole will be considered under the next bill. The part particularly specified was that in which the witness, after stating that James Given told him one of his sons was to manage the factory, and the other was to continue in the store in town, says, " but the whole course of his remarks led me directly to the inference, that he himself was the real owner of both establishments, and that the sons were associated with him for the purpose, perhaps, of giving them better standing in society, and putting them forward in business." This is objected to as merely matter inferred by the witness himself, and not the evidence of facts or declarations of the parties. And we think the evidence was, on that account, inadmissible. To prove a partnership by the acts and declarations of parties, what they said or did is to be stated, not what a witness infers or conceives in his own mind. He may often form conclusions founded on misconception. It is for the jury to make

the inference, and to that end the premises must be laid before them, and not the inference or understanding of the witness.

The second, third, fourth and fifth errors are in admitting evidence of statements and letters by James Given, in relation to dealings with other persons than the plaintiffs, in the years 1829, 1830 and 1832, tending, as is alleged, to show a partnership between him and Samuel in the carpet factory and hardware store. If they were any, even the slightest evidence to that effect, they were admissible, and the jury, under the direction of the court, were to judge of their effect. Some expressions are to be found in them of that nature, though by themselves they would seem to amount to but little. They were, therefore, properly admitted.

I pass over the sixth bill for the present, and come to the seventh. The defendants offered a promissory note drawn by Samuel Given, dated Baltimore, 9th November, 1829 to show that Samuel Given was on that day in Baltimore, and thus impair the evidence given by the plaintiff, that James Given on that day made the present purchase in Baltimore. We do not think this is evidence of the fact. It might be better proved otherwise, and the note might be dated in Baltimore, though actually drawn elsewhere. There was no error in this rejection.

Samuel Given, one of the defendants, in his own right, and also as executor of James Given, was offered as a witness on his own behalf, evidence being first tendered of his final discharge under the Bankrupt Act, and the offer was renewed after the plea of discharge as a bankrupt. He was rejected, and we think properly. No authority has been cited that goes so far as to say, that a defendant while a party on the record, litigating the case, was ever admitted as a witness in his own behalf, when objected to by the plaintiff. Could the defendants have had his name struck off from the record on the plea of bankrupty, the end might have been attained so far as respects the suit against him in his individual right; but this was not asked for, perhaps for sufficient reasons, and therefore he still remained a party to the suit and liable to the costs accrued from the time of his discharge. As executor also, the same state of things continued: nor is it easy to see any ground on which his name as executor could be struck off, without the plaintiffs' consent, even though he became a bankrupt during the trial: for his office of executor still continued, and as such, the case must proceed against him, and he must continue a party. There was no error we think in this.

The transfer of the goods was evidence as part of the *res gestæ* on the question whether or not the defendants were partners. It is true, circumstances subject it to the charge of being fraudulently concocted by the parties after its date, and after claims were foreseen. But this is matter of comment to the jury, bearing on the good faith and honesty of the instrument, not on its competency. As to its proof, as the witness, Robert Given, became interested

[Given v. Albert.]

after its date and ostensible execution, the defendants ought not thereby to lose the evidence. Proof of his handwriting and that of the parties would be sufficient *primâ facie* for its being read in evidence, and circumstances of suspicion to the contrary, are matters of evidence or argument for the plaintiff.

It is apparent, however, to any one who peruses this record, that the turning point of the case was the evidence given by Wordebaugh, going to show the circumstances of the sale of the goods by the plaintiff. Without that, the other evidence to make out the partnership would, perhaps, not have availed. Now the defendants would be liable as partners, if a partnership really existed at the time of this sale, though unknown to the plaintiffs—or if the plaintiffs at the time of the sale were induced to believe such a partnership existed, and they sold the goods on the faith of such assertions and conduct, although, in fact, there was no such partnership. The first question is merely a matter of fact for the jury on the evidence. The second is a distinct question; and we are of opinion, that the conversation of James Given, as proved by Wordebaugh, contains nothing that could justify the plaintiffs in believing a partnership existed; on the contrary, when he told them to charge them either to himself or Samuel, he gave them the option to charge one or the other, and the plaintiffs making their choice to charge Samuel, were bound by it. There is nothing amounting to an assertion of partnership, but rather the reverse. We think the court erred in their charge in those parts of it in which they told the jury, that the defendants were liable as partners if the jury believed the testimony of Wordebaugh, whether a partnership actually existed or not.

The only remaining question is, as to the right of the plaintiffs to proceed against Samuel Given, the survivor of the alleged partners and the executors of James Given, in a joint suit. Whatever a court of equity might be able to do in such a case, yet it seems to us, the difficulties attending a common lawsuit render it impracticable to carry the doctrine of *Lang* v. *Keppele* to this extent. A joint judgment cannot be rendered because the executors are not personally liable, although Samuel Given is. Two separate judgments against defendants in a joint action of *assumpsit* are unknown, and would be too questionable an innovation. The voluntary appearance of the executors is no more than a waiver of a *scire facias:* it cannot be considered as an agreement to be liable out of the usual mode. It seems to us, that the executors could be reached, on this ground, only by a new suit against them, founded on the insolvency of the surviving partner: and that the difficulty founded on the lapse of time would be relieved, for one year, by the second section of the limitation Act of 1785.

Judgment reversed.