*McAllister, for plaintiff.*

*Rawn, for defendant.*

---

*Court of Common Pleas, Dauphin County, September 7th,* 1852.

COMMONWEALTH EX REL. SHEESLEY *v.* MARTIN.

The act of March 28th, 1806, gives no power to the directors of the poor of Dauphin county to bind a child out as an apprentice, unless he or she is chargeable upon the county. Under the act of 27th September, 1770, the mother of a minor has no power to bind her out as an apprentice when the father is living and competent to act. The court will allow a child fourteen years of age to choose his own place of residence.

BY THE COURT.—It appears from the evidence that Catherine Sheesley is a daughter of the plaintiff, and is about fourteen years old. The respondent claims the right to hold her in his custody by virtue of indentures entered into between himself and the directors of the poor of this county, made April 22d, 1852, by

which the said Catherine was bound to serve him as an apprentice until she should attain the age of eighteen. The relator and his wife separated some two years ago; the former taking with him the most of their children, including Catherine, who was placed by her father with the respondent, under a promise that she should live with him until she attained the age of eighteen; but owing to some disagreement with a member of the respondent's family, the relator declared his determination to remove Catherine to another place "for spite." She was anxious to remain in the respondent's family. When her father declared his intention to remove her, she, in company with her mother, went to the house of one of the directors of the poor, who resided in the neighborhood, and declared that she had no home; whereupon, the director made out an order for her removal to the poorhouse, and accompanied the mother and child nearly to that institution. On the following day, the director, together with the mother, the child Catherine, and the respondent Martin, met at the poorhouse. The indentures were drawn up, signed by the one director, sent to the other some miles distant, and executed by him and carried to two magistrates in this town, who approved thereof. This whole proceeding was unknown to the relator, and appears to have been kept concealed from him until consummated. Is this a binding of Catherine? By section 5 of the act of March 28th, 1806, establishing the poorhouse in Dauphin county, the directors of the poor are authorized "to bind out such poor children as shall come under their *notice*, or may now be bound as apprentices by the directors of the poor." By section 8 of the act of March 9th, 1771, then in force on this subject, the overseers of the poor were authorized, "with the approbation and consent of two justices, to put out as apprentices all such poor children whose parents are dead, or shall by the said magistrates, justices, or managers, be found unable to maintain them."

Section 8 of the act of June 13th, 1836, contains precisely the same provisions, excepting the omission of the word "managers." Under it the magistrates alone are to judge of the ability of the parents to maintain their children. The first question to be solved is the meaning of the act of 1806. We understand the expression "come under their notice," to mean the same as come under their cognizance or jurisdiction. Such as the law places under their charge. The word "or" we consider should be construed "and." They must be such poor children as the law places under their charge, and such as the law permits to be bound out by the overseers of the poor. To give this act any other construction would leave the directors of the poor without rule or guide, as the act does not pretend to declare what children shall be bound out by them, but refers to another act to find the criterion and define the power of action. The poor laws declare that they must be

"such poor children whose parents are dead, or shall by the said magistrates or justices and managers be found unable to maintain them." In the present case the parents are both living, and there is no proof of their inability to maintain their offspring. In fact, the father had made arrangements for the maintenance of this child. She was not chargeable on the county of Dauphin until improperly made so by the order of one of the directors of the poor. No two magistrates ever determined or adjudged that the parents were unable to maintain her. This we consider indispensable under the acts of Assembly. Generally a decision to that effect takes place, when two justices make an order of maintenance, after which it would require no other adjudication; but the binding must be with the approbation of two justices. But where the person is committed to the poorhouse on the order of one of the directors, there must be the adjudication by two magistrates of the inability of the parents to maintain the child, before it can be bound out as an apprentice. This is not mere *form*, but grave substance, requiring the consultation and judicial action of two justices, else any man's child might be bound out without his consent, although the parent was able and willing to maintain it. Nor does this determination come in conflict with the provisions of the act of September 27th, 1770, in relation to apprentices, which declares that the indentures shall be good when made "with the assent of the parent, guardian, or next friend, or with the assent of the overseers of the poor and approbation of any two justices." That is, the assent of the parents, if living, and competent to act, must be had. The assent of the mother is not valid, when the father is living (5 W. & S. 339), unless he is legally incompetent to act (1 Ash. 71), or absent and taking no charge of the child (1 S. & R. 367). The overseers can only bind when the child becomes *legally* chargeable (1 S. & R. 250). The assent of the overseers or parents cannot be taken indiscriminately, but it must be of the one or the other, according to the nature of the case (1 S. & R. 250). When there is no parent or guardian the overseers can act, provided the child becomes legally chargeable. In the present case the father was legally competent to act, was living in the immediate neighborhood, and although probably not a very prudent or judicious person, was exercising a superintending control over his child, and attending to her maintenance; therefore, we are constrained to say that the indentures produced were not executed according to law. We are also of opinion, from all the evidence, that they were obtained improperly and surreptitiously. The father had declared his intention to change the residence of his child; that was known to the master, the child, and her mother. The director of the poor is resorted to for instruction, or to devise some means to prevent the father from effecting this object. The plan of sending the child to the poorhouse is

[Commonwealth ex rel. Sheesley *v.* Martin.]

concocted. They all meet there, and the binding takes place. Now there is no pretence that the child was chargeable upon the county, nor was it determined by the justices that the parents were unable to maintain her. In fact, the justices never met, never conferred, nor made inquiry; were not even acquainted with any of the facts; but gave their assent separately and as a matter of course. The whole proceeding appears to have been a scheme to obtain what they considered a legal right to hold their child from her father. The indentures, in our opinion, are utterly null and of no effect as regards that parent, and equally so as to the minor. Either can avoid them at pleasure. It becomes our duty in the present case to declare them void as to the father, and to confer no right on the respondent to hold Catherine Sheesley. The next point to be determined is, whether the child shall be delivered up to her father on this writ? As a general rule, the father is entitled to the custody of his children; and it is frequently the duty of courts to furnish him with the means to coerce that custody. Does this case form an exception? It seems that the father and mother have separated by mutual consent; that the father is of intemperate habits, though not an habitual drunkard; that he has no place of residence, or the means of maintaining his children under his own eye; but his object is to place this daughter under the charge of another person no more worthy of trust nor competent to maintain her than the respondent, whom the father had previously selected as a suitable person to bring up his daughter, and with whom he had agreed to leave her until she was eighteen years of age. The projected change is not because of any ill-treatment or neglect of the child by the respondent, but to gratify the ill-feeling of the father towards his own wife and the respondent's family. The anxious wish of Catherine is to remain with the respondent, and her mother also desires it. The mother has an equal interest with the father in the welfare of this child; and in the present case, we cannot help feeling, has consulted that interest with equal judgment and more regard to the girl's feeling; although she resorted to an improper and illegal course to secure the respondent in withholding her from her father by means of the indenture. If this was a controversy between these parents for the custody of their daughter, we should not hesitate to award her to the care of her mother, under all the circumstances; and as the mother desires her to remain with Martin, and it is the wish of the child, and as we also believe it to be for her welfare, we decline awarding the possession to the relator as prayed, but leave the child at liberty to remain with the respondent. She is under no illegal restraint, and we do not feel ourselves bound to restrain her actions, but will permit her to exercise her own free will in returning with the respondent as she has desired. A similar case has been adjudged and determined in the same manner by the courts of Schuylkill

county; and although their decision on a *habeas corpus* is not conclusive, yet a spirit of comity, as well as a conviction of the correctness of the decision, should induce us to leave it undisturbed. We shall make an order as to costs in the present case, except as to the writ and service thereof, which the relator is ordered to pay.

*Brown, for plaintiff.*

*Fisher, for defendant.*