106   207
137   420

# Sweigard *versus* Wilson.

1. Where, by agreement of the parties filed, a cause is submitted to a referee under the provisions of the Act of May 14, 1874, the decision of the referee must conform to the requirements provided by the Act of April 22, 1874, with respect to the decision of a court in a case of a submission under the last mentioned Act. That is, such decision must state separately and distinctly the facts found by the referee, the answers to any points, submitted by counsel, and the referee's conclusions of law, and judgment cannot be entered upon such decision, until thirty days after filing and notice thereof by the Prothonotary to the parties. A referee's decision, lacking the foregoing requisites, and a judgment entered thereon upon the same day it was filed, although after ample notice given by the referee to the parties and a hearing of exceptions, will be reversed upon writ of error.

2. Marr *v.* Marr, 7 Out., 463, followed.

[Sweigard *v.* Wilson.]

April 3, 1884.  Before Mercur, C. J., Gordon, Trunkey, Sterrett, Green and Clark, JJ.  Paxson, J., absent.

Error to the Court of Common Pleas No. 4, of *Philadelphia county*, to review the judgment entered upon the decision of a referee, to whom the cause was submitted by agreement of parties under the Act of May 14, 1874, filed in said court: Of January Term, 1884, No. 154.

This was an action of assumpsit, by Thomas H. Wilson against Isaac A. Sweigard, to recover the sum of $800, money claimed to have been loaned by plaintiff to defendant.  The defendant filed an affidavit of defence, denying that the money was loaned, and averring that it was the plaintiff's contribution as " margins" for certain speculations in stocks, jointly entered into by plaintiff and defendant.  Afterwards, the case being at issue, the parties by agreement in writing filed, referred the matter in dispute to David W. Sellers, Esq., as referee under the provisions of the Act of May 14, 1874, P. L., 166.

The referee, after trial, gave the parties more than thirty days notice of his intention to file his report.  Exceptions were filed to the report by the defendant, within thirty days, which, after argument, were dismissed by the referee, who thereupon filed his report on November 30, 1883, awarding judgment in favor of the plaintiff, in the sum of $1,093.11, as of November 16, 1883, and on the same day the following entry was made on the docket of the court, immediately following the entry of the filing of said report: " Nov., 1883.  Judgment."

The following is the report of the referee in full:

The undersigned, to whom was referred the above case, as appears by the certificate hereto attached, makes report : That after acceptance of said appointment, and filing in the office of the prothonotary the affidavit required by the Act of May 14, 1874, section 2, he met the parties, plaintiff and defendant, at his office, 229 South Sixth street, with their respective counsel, Mr. Wm. F. Johnson for plaintiff, and Mr. Richard Vaux for defendant, from time to time, in accordance with agreement.  At these meetings the testimony which is hereto attached was taken, and the argument of counsel thereon was concluded September 11, 1883.

The plaintiff sues to recover the amount of two loans of money made to the defendant, one for $300 on February 17, and the other of $500 on May 16, 1876.  The defendant concedes the receipt of the money, but contends that the same were contributions for a joint purchase of stocks, which resulted in a loss far beyond those amounts.  The litigants sustain their respective claims by their oaths, each seem worthy of belief—equally so.

[Sweigard *v.* Wilson.]

The stock operations alleged to have been for joint account, were made through P. S. Peterson & Co. Yet an inspection of the books of that firm show no joint transactions, but do show each of these litigants to have had individual transactions. On the ledger of P. S. Peterson & Co., in the individual account of Isaac A. Sweigard, the stocks referred to are debited to him alone, and that account is closed on January 1, 1877, with a debit balance of $12,351.08. In the same ledger is an individual account of Thomas H. Wilson, commencing in April, 1874, and closing with credit balance of $108.25 on May 25, 1876. In this account no mention is made of the stocks referred to.

From these books the inference can only be made that the purchase of the stocks were for the individual account of the defendant.

Wilson testifies that these loans were paid by him to P. S. Peterson, on the request of Sweigard. The individual account of Sweigard shows these credits. These entries would show the ordinary relation of debtor and creditor.

These inferences are further corroborated by the following letters in evidence.

On May 3, 1876, Mr. Sweigard received a letter of which the following is a copy:

MAY 3, 1876.

" *Mr. Isaac A. Sweigard,*

"DEAR SIR:—We this day charge your account Twenty-Five dollars, two commissions for 30 days on your 100 shares of Pennsylvania Railroad stock, provided the margin is kept good. Yours, &c.,

" P. S. PETERSON & CO.,<br>" *per Freas Wilt.*"

Though the writer of the above testified that it was understood that Wilson was jointly interested in these stocks, yet there is only one inference to be drawn from the letter, and that is that the stocks referred to were the individual stocks of Sweigard.

The above letter was sent by Sweigard to Wilson, on May 5, 1876, with a lead-pencil indorsement of which the following is a copy:—

" MR. WILSON:—Please see Mr. Peterson this A. M., and arrange the matter. I have everything with him I own, and at this time cannot afford to lose it; besides it's not all my own money. Very truly,

"5 | 5 | 76.                                    I. SWEIGARD."

10 OUTERBRIDGE.—14

Certainly the inference to be made from the above letter is, that if a loss were made, it was individual and not joint.

On May 31, 1876, two weeks after the last advance of money by the plaintiff, the defendant received a letter from P. S. Peterson & Co., in the handwriting of P. S. Peterson, who died in 1877. The following is a copy:—

"PHILADELPHIA, May 31, 1876.
" *Isaac A. Sweigard, Esq.*

"DEAR SIR:—We regret to have to advise you that unless you increase your margin at once—your stock which we are carrying—viz—100 shares, Penna. R. R., and 100 shs. Green and Coates St. P. R. W. Co., will be sold without further notice. You cannot expect us to continue carrying your stocks when we have no margin therefor. We trust therefore you will increase your margin by 10 A. M. to-morrow morning. Respectf'y, .            " P. S. PETERSON & Co."

. From the same writer as the above a letter was sent to the defendant of which the following is a copy:'

" *Isaac A. Sweigard,*                          June 19, 1876.
". DEAR SIR:—We regret you do not comply with your agreement. If you had made money out of the transaction and we did not pay you, there would be a great howl about it —but as the boot is on the other leg we did not suppose you would act in such a dishonorable manner.

" Do you intend we shall sell your securities? It certainly appears so. We want an immediate answer. Respectf'y,
" P. S. PETERSON & Co."

Certainly the above last two letters indicate no interest existing in Mr. Wilson, and as at that time the account of Wilson showed a credit balance, it can scarcely be inferred that it was then believed he had any known interest in the stocks.

. On June 24, 1876, the defendant received a letter of which the following is a copy:

" *Mr. I. A. Sweigard,*                          June 24, 1876.
" DEAR SIR:—You will please take notice unless we have $500 additional margin we shall sell on Tuesday—namely 100 shs. Penna. R. R., and 100 shs. Green and Coates P. R. W. at best market price.

" P. S. PETERSON & Co.,
" *pr Freas Wilt.*"

"P. S.—Mr. Wilson has not called to deposit any further margin on your account.

" P. S. PETERSON & Co.,
" *pr Freas Wilt.*"

[Sweigard *v.* Wilson.]

This letter was sent by the defendant to Mr. Wilson, with the following endorsement:

" *Mr. Wilson,*

"Wont you take the half of the 100 shs. G. & C., this you promised me you would do and with what you have already deposited on it and a little additional you can save me, otherwise it will have to be sold.

" I was to see Peterson the other day after you told me you had not time to attend to it, and he agreed to wait until to-day. I am sure I would do this for you and anything more in my power which it would be my duty to do. If you take your half I have $100 and can then save myself, otherwise not.

"6 | 24 | 76.                                *I. S.*"

The inference from the above letter is that the writer was to be saved from an individual loss. If the fact had been that the stocks were jointly owned by joint order of purchase, the letters would have not always expressed an individual liability.

The undersigned decides this case on the written testimony, disregarding the statements of each of the interested, and awards judgment in favor of the plaintiff for his cause of action, and assesses damages as follows:

| | | | | | | |
|---|---|---|---|---|---|---:|
| 1876. | Feby. 17. | To Cash loaned, | . | . | . | $300 00 |
| | | " Int. to April 15, 1876, | . | . | | 3 00 |
| | | | | | | $303 00 |
| | April 15. | " Cash paid, | . | . | . | 50 00 |
| | | | | | | $253 00 |
| | | " Int. to May 16, 1876, | . | . | | 1 26 |
| | May 16. | " Cash loaned, | . | . | . | 500 00 |
| | | | | | | $754 26 |
| | | " Int. to Nov. 16, 1883, on Bal. of $253, | | | | 113 85 |
| | | " Int. do. do. on $500, | . | . | . | 225 00 |
| | | | | | | $1,093 11 |

I do award a judgment in favor of the plaintiff in the sum of $1,093.11, as of November 16, 1883.

DAVID W. SELLERS,
*Referee.*

The defendant's exceptions to the foregoing report related to the findings of fact, principally upon the ground that they were against the weight of the evidence.

The referee reported on said exceptions as follows:

"The exceptions assume that the referee has disregarded the oral testimony. It is true that Wilt says Mr. Wilson claimed that one half of the stock should be charged to his account, and that he thought the books would show that one half was transferred from the account of Mr. Sweigard to Mr. Wilson. On inspection, however, the book shows nothing of the kind. It is admitted that Mr. Wilson did call to have one half of certain stock transferred to him. But the referee sees nothing in this inconsistent with the position of the advance. Wilson would naturally ask for security. Peterson did not transfer, nor from the evidence could he have done so, unless the purchase-money of the stock should have been paid. This was never done by the defendant, nor is it pretended that Wilson called to get one half upon such a payment. I see nothing in the oral testimony of Mr. Wilt which shows that Wilson requested a purchase of stock jointly with Sweigard, or that he had admitted after the purchase that it had been made for joint account. The testimony of Mr. Suplee amounts to no more.

"If Sweigard had made a large profit on the purchase, I see nothing which would have established the right of Wilson to an equal share. The fact that Sweigard did finally settle the account as an individual account, and that Wilson was not sued either individually or jointly, corroborates the view taken by the referee.

"The referee dismisses the exceptions and confirms the judgment heretofore given."

After the filing of the referee's decision in the office of the prothonotary, and the entry of judgment, as hereinbefore set forth, the defendant took this writ of error, assigning for error, inter alia,

1. The referee erred in making the following award: "I do award judgment in favor of the plaintiff in the sum of $1,093.11, as of November 16, 1884."

2. It was error to have judgment entered upon the finding of the referee, the same day the report was filed.

3. The referee erred in not setting forth in his report the facts of the case *separately* and *distinctly*, and the conclusions of law upon the same, instead of drawing "*inferences*."

The remaining assignments were to the dismissal of the several exceptions filed to the decision.

*Richard Vaux* and *Bayard Henry*, for the plaintiff in error, cited Marr *v.* Marr, 13 W. N. C., 544; s. c., 7 Out., 463.

[Sweigard v. Wilson.]

*William F. Johnson*, for the defendant in error.—The elements that called forth the ruling of the court in Marr *v.* Marr are wholly wanting here. There a judgment was entered without report, and without notice, and it appeared that there was manifest error on the part of the referee in the rejection of substantial evidence offered by the defendant. Here a report was made up, copies sent to both counsel, exceptions filed and argued after more than a month's notice, and ample time, notice and opportunity given for other exceptions or objections. The decision in Marr *v.* Marr was not then known to the profession, and the customary course as to proceedings before auditors in the county was taken *by mutual consent* and *without objection or exception.* It is too late now to object to a course that was mutually acquiesced in, unless some substantial injustice has been done, or an imperative requirement of the law been wilfully violated, which is not pretended.'

If there was any irregularity the plaintiff in error, by his acquiescence, was equally in fault, and his claim for relief, on a mere technicality, comes with a bad grace. There is no averment that any substantial rights were curtailed; that any exceptions could be filed that were not filed with the report. The entry of the judgment was the act of the prothonotary, and not at the instance of either the referee or defendant in error.

If the plaintiff in error is technically right, then the judgment, November 30, may be stricken off, and the prothonotary in due course, at the expiration of thirty days, enter the judgment on the finding of the referee.

Mr. Justice CLARK delivered the opinion of the court, May 26, 1884.

This cause was submitted by an agreement of the parties, to a referee, learned in law, under the provisions of the Act of 14th May, 1874, Pamph. Laws, page 166; that Act provides that such referee shall in all things pertaining to the trial and decision of the case have the powers and perform the duties that would belong to the court, under a like submission. The mode of procedure to be pursued, and the duties which devolve upon the court under such submission are regulated and prescribed by the Act of 22nd April, 1874, Pamph. Laws p. 109.

It is the duty of the referee, under this Act, to reduce his decision to writing, " stating separately and distinctly the facts found, the answers to any points submitted in writing by counsel and the conclusions of law." In Butterfield *v.* Lathrop, 21 P. F. S., 229, which was a reference under a similar statute, it was held, that the finding must contain the

[Sweigard *v.* Wilson.]

facts as fully as a special verdict, and we regard this as the proper rule. A special verdict is one by which the facts of the case are put on the record and the law is submitted to the judges, 2 Bouv., 780; it follows, that the judgment is but the conclusion of the law upon the facts thus found. As the judgment entered upon the report of a referee, must be the logical legal conclusion, drawn from the facts which he puts upon record, the finding must exhibit such degree of certainty and fullness, as will of itself justify the judgment; what is not found is taken not to exist and this court will not infer a fact not found; nothing should be left for inference, except that which must necessarily be inferred.

The statute requires that the decision shall be stated in form; that the facts, the answers to points and the conclusions of law "shall be separately and distinctly stated." The question involved thus becomes the convenient subject of review, either upon appeal or writ of error as these respective remedies may apply. We cannot however review the finding of the referee upon the facts; that is as conclusive upon us as the verdict of a jury. The simple question for determination of this court, in each case is whether or not, the judgment entered is the legal consequence of the referee's finding. The mode of procedure introduced by these Acts of 1874, is comparatively new; it has not yet been fully established in general practice throughout the state, and it becomes important, therefore, that the rules respecting it should be prescribed and followed. We are of opinion that the report of the learned referee fails to exhibit the formal requirements of the statute.

The suit is brought by Thomas H. Wilson against Isaac A. Sweigard, to recover for money loaned or advanced to the amount of $800. The defendant denied the loan or advance of money to him by the plaintiff; but, admitting the receipt of the money, alleged that it was a contribution by the plaintiff, to a joint adventure on speculation in stocks, purchased upon margin, which resulted in a loss. The distinct question of fact upon which the case hinged was, whether or not, the money thus advanced was a loan or a contribution.

The business, whether individual or joint, was conducted by P. S. Peterson & Co., stock brokers, doing business in the city of Philadelphia. The learned referee does find that, from the books of this firm, the inference can only be made, that the purchase of the stocks was for the individual account of Sweigard; that this inference is corroborated by certain letters in evidence and incorporated in his report, and that these letters indicate no interest existing in Wilson. But the books of P. S. Peterson & Co. and the letters referred to, constitute only a small part of the testimony in the cause. Both of the

parties to the suit were examined as witnesses; Freas Wilt and Thomas B. Suplee were also called; each and all of these testified at length upon the material facts of the case. The inferences from the books of P. S. Peterson & Co., and from the letters, are drawn from a part of the testimony only; no distinct conclusion of fact is stated as the result of the whole evidence, upon which, as upon a special verdict, the judgment can be supported. The testimony is contradictory and conflicting, but we cannot consider it; with this conflict we have nothing to do; what the truth of the transaction is was for the determination of the referee, and his findings and conclusions should be separately and distinctly stated.

The statute of 22d April, 1874, further requires that the referee's report, when reduced to form, shall, within a time designated, be filed in the office of the Prothonotary or clerk of the proper court, who shall give notice thereof; if no exceptions are filed within thirty days thereafter, judgment shall be entered thereon; if exceptions are filed, the tribunal which tried the cause may, either direct judgment to be entered, according to the decision previously filed, or make such modifications as shall be deemed just and right. In the present case notice was given to the parties, by the referee himself, thirty days before the filing of the report, a copy of which report accompanied the notice, and the exceptions filed with the referee were argued before him. The parties were perhaps not bound to act upon the notice of the referee, but they did; they proceeded in this form apparently by consent, certainly without objection; they had all the advantages by exception, re-argument and reconsideration, which they could have had if the letter of the law had been observed, and for this irregularity we would certainly hesitate to reverse. But, as the judgment must be reversed on other grounds, it is proper that we should refer to the plain and obvious provisions of the statute in this respect. The referee, "in all things pertaining to the trial and decision," is required "to perform all the duties that would belong to the court under a like submission." It is the plain duty of the court, and therefore of the referee, to file his report when made, in the Prothonotary's office, there and thereafter to be proceeded with as directed by law. Many reasons might be assigned for this provision, but it is quite sufficient here to say that the statute requires it, and it is in all such cases a safer and better policy to pursue the plain direction of the statute, than to embarrass its operation by any needless departure therefrom. This is the view expressed in the case of Marr v. Marr, 7 Out., 463, and we regard it as the correct one. The Prothonotary's office is a public office, the records there contained are always accessible to those

interested in them; the report when filed becomes part of the record, it is then open to the inspection of all concerned, copies may be obtained and further proceedings had, as directed by law. The office or place of business of a referee may not always be open; professional employment may render access to the report impracticable and unsatisfactory; these and many other considerations satisfy us that the mode of procedure pointed out by the statute, is the better one and should be pursued. The decision in the case of Marr *v.* Marr, supra, was not known to the profession when this cause was before the referee; the practice was not then established, and the learned referee, in the press of his professional engagements, perhaps failed to observe the peculiar provisions of the statute.

For the reasons stated the judgment is reversed and the cause is remitted to the court below for further proceedings before the referee.