# Reed, Crane & Co. *versus* Kremer & Co.

1. A creditor of a partnership is at liberty to prove the fact of the partnership, as he alleges it to be, without regard to the manner in which parties have arranged their affairs between themselves. He is not concluded by their written contract or agreement as to the relation they sustain to each other.

2. Even, if in fact there be no partnership, one is liable as a partner, if he represents to another that he is a partner, and thus obtains goods from him for the partnership.

3. The fact that there is a partnership may be established by the several admissions of all those who are alleged to compose it, or by the admissions of one and the acts and declarations of the others.

January 12th, 1886.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

[Reed, Crane & Co. v. Kremer & Co.]

ERROR to the Court of Common Pleas, No. 1, of *Philadelphia county*: Of January Term, 1883, No. 200.

This was an action of assumpsit by Charles W. Kremer trading as C. W. Kremer & Co., against Joseph P. Reed, James L. Crane and John B. Watson, now or late trading as Reed, Crane & Co. Plea, non-assumpsit.

Under the rule of the court an affidavit being filed by John B. Watson denying the partnership, the issue also raised the question of partnership between the three defendants. In fact this was the only point tried, as the other defendants admitted the liability, and the only party defending, Watson rested his defence on the denial of the partnership. On the trial of the case before PIERCE, J., the following facts appeared:

In April, 1878, Reed, Crane & Co. formed a partnership for trading in Para, Brazil. J. P. Reed and James L. Crane were then the partners. Crane resided in Para, Reed in Philadelphia. J. P. Reed and Kremer the plaintiff also had a commercial house in Philadelphia, the firm of which was J. P. Reed & Co.

In July, 1878, J. P. Reed & Co. made a contract with Watson to employ him as a general manager, receiving a sum equal to thirty per cent. of the profits.

In the following October a similar agreement between Reed, Crane & Co. and Watson was drawn and executed by Reed for himself and Crane, but without authority from Crane, and by Watson. This paper was sent out to Crane for signature, who declined signing till he came to Philadelphia in 1879, when he signed it after discussing the meaning and effect with Watson. The following is the agreement:

PHILADELPHIA, October 18th, 1879.

Received from John B. Watson twenty-five hundred dollars for account, Reed, Crane & Co., Para, Brazil, paid during the year 1879.                    JOSEPH P. REED.

Memorandum of agreement between Joseph P. Reed and James L. Crane, trading as Reed, Crane & Co., Para, Brazil, and John B. Watson of Philadelphia, United States of America. Reed, Crane & Co. agree to employ John B. Watson, during the term of their co-partnership as per agreement dated first day of April, 1878 (copy of same attached), to give a general supervision to their business in Philadelphia, but not requiring him to leave that city, nor to do anything that will interfere with his own business, nor prevent him from leaving the United States at any time, and for this they agree to pay him a sum equal to thirty per cent. of their net profits, to be ascertained and settled annually on the tenth day of October.

{Reed, Crane & Co. *v.* Kremer & Co.]

The said John B. Watson agrees to pay the said Reed, Crane & Co., the sum of twenty-five hundred dollars within twelve months from the date of this agreement.

. It is mutually agreed that John B. Watson shall be consulted in all matters of importance, and his opinion shall be decisive, as to the course to be pursued, unless both partners agree thereon. It is also agreed that a full and complete balance sheet of the books of Reed, Crane & Co., showing all debts, contracts, assets, etc., etc., shall be handed to John B. Watson each and every month during the continuance of this agreement.

Witness our hands and seals this twenty-ninth day of October, 1878.

Witnesses present all signatures.

|                         |            |
|-------------------------|------------|
| JOSEPH P. REED,         | [L. S.]    |
| JAMES L. CRANE,         | [L. S.]    |
| Per J. P. REED.         |            |
| REED, CRANE & CO.,      | [L. S.]    |
| JOHN B. WATSON,         | [L. S.]    |

ISAAC J. ALEXANDER,
THOMAS WINN,
C. CORNISH.

PHILADELPHIA, February 3 | 79.
I agree to all the provisions of this agreement.

JAMES L. CRANE.

In January, 1880, Kremer bought out his partner, Reed, in the Philadelphia house, and they being creditors of Reed, Crane & Co., he says he asked Watson if he was a partner, and Watson admitted he was. He had, so Kremer asserts, made the same admission in October or November, 1878. In July, 1880, it was ascertained Reed, Crane & Co. were utterly insolvent; their assets were sold out and the debt due Kremer entirely unpaid.

He then brought suit against this firm, including Watson as one of the defendants, and shortly afterwards sued him for deceit for fraudulently misrepresenting the condition of the house.

The plaintiff having given evidence of an admission made in January, 1880, by the defendant John B. Watson, that he was a partner in the firm of Reed, Crane & Co., the defendants, to support the evidence in denial that such an admission was made, called John B. Watson, and he having testified that no such admission was made, it was proposed to ask the witness this question:

. "Going back to the interview which Mr. Kremer says he had with you in January, 1880, when he was buying out J. P.

[Reed, Crane & Co. v. Kremer & Co.]

Reed & Co., state what was the credit of the house of Reed, Crane & Co. at that time in January, 1880," which question was objected to as not pertinent, and the objection was sustained and the defendant excepted, and the judge sealed a bill of exceptions. (First assignment of error.)

The defendant proposed to read to the jury a contract made with the plaintiff's firm July 15th, 1878, and renewed by himself January 15th, 1880.

The plaintiff on cross-examination had proved this contract was made when he formed the partnership of J. P. Reed & Co., and was renewed when he bought out J. P. Reed in January, 1880, and identified the document. The defendant then proposed to read to the jury the agreement between Watson and the firm of J. P. Reed & Co., dated July 15th, 1878, signed by the plaintiff himself, and also renewed between the plaintiff alone and this defendant on the 15th of January, 1880, to continue for three years. And thereupon the counsel for the plaintiff objected, and the objection was sustained, and the court, at the request of the defendant Watson, sealed an exception. (Second assignment of error.)

The defendant requested the court to charge, *inter alia.*

"6. There is no evidence from which the jury are warranted in finding that the actual contract between Reed, Crane & Co. and J. B. Watson was a partnership, or other than what is expressed in the writing produced and proved by the plaintiff and by the defendant, as being the contract between those parties."

Answer. I decline that point. (Third assignment of error.)

Verdict for the plaintiff for $7,704.93 and judgment thereon; whereupon the defendant took this writ, assigning for error the rejection of his testimony as above set out, and the answer of the court to his sixth point.

*R. C. McMurtrie* (*Th. J. Diehl* with him), for plaintiff in error.

*Richard P. White* (*Charles L. Lockwood, Joseph A. Sinn* with him), for defendant in error.

Mr. Justice GORDON delivered the opinion of the court, February 1st, 1886.

For the purposes of this case we must assume that the agreement dated 29th October, 1878, between Reed, Crane & Co. and John B. Watson, did not constitute the latter a member of that firm; the court below so ruled, and as this ruling cannot be reviewed on the present writ of error it must stand as the law of this case. It is certain, however, that that

agreement did not conclude Charles W. Kremer, the plaintiff below, for he was at liberty to prove *aliunde* the fact of the partnership as he alleged it to be, and that without regard to how the parties had arranged their affairs between themselves. The partnership might be established by the several admissions of all those who were alleged to compose it, or by the admissions of one, and the acts and declarations of the others: Welsh *v.* Speakman, 8 W. & S., 257; Taylor *v.* Henderson, 17 S. & R., 453; Johnston *v.* Warden, 3 Watts, 101. Nor does it at all affect this right of proof by the plaintiff, that there were in fact articles of co-partnership between the defendants: Widdifield *v.* Widdifield, 2 Bin., 245; Edwards *v.* Tracy, 62 Pa. St. R., 374. Kremer had nothing to do with the agreements of Reed, Crane & Co., written or oral, nor was he bound by them. Neither would it make any difference that in fact there was no such partnership, if the defendants represented themselves as such to the plaintiff, and thereby obtained his goods: Given *v.* Albert, 5 W. & S., 333. Kremer was undoubtedly a competent witness to prove the acts and declarations of Watson, and so were Reed and Crane. What they said could not be introduced to make him a member of their firm, but there is no reason why they could not be used as witnesses to prove what he said concerning his own relationship to that firm. It is possible that they might be estopped by the agreement of the 29th of October, 1878, but Kremer was not, and the partners might certainly be used to show that that agreement, as to third persons, was but a sham, and did not truly represent the status of the parties. The learned counsel for the defendants seems to think that we must treat this contract as fixing absolutely the position of the defendants. He says: "If a stranger proposes to prove actual partnership, as a fact, he is bound by what was the actual contract." This proposition is true enough in the abstract, but false as to the case in hand. If a stranger undertakes to show the position of certain persons as partners *inter se*, and there be articles of co-partnership, doubtless such articles would be the best evidence, though even this not absolutely, but *prima facie* only. But when a partnership is to be established, not as affecting those who may chance to compose it, but others with whom they have had dealing, the case, as we have seen, is very different. It would, indeed, work serious injustice to hold that one dealing with a firm must be bound by a secret agreement of partnership of which he may have had no previous knowledge, or which, even if known, may not embrace all the members of the company, or set forth correctly their several interests or liability. We cannot entertain a proposition such as this, or adopt it as containing a true exposition of the

law governing a case like that in hand. What we have already said disposes of the principal assignment of error, and the others require but little attention. The offer to prove the condition of the credit of the house of Reed, Crane & Co. in January, 1880, is so utterly irrelevant that a serious discussion of it is almost out of the question. It is said that if the fact offered for proof had been admitted, it would have tended to render improbable the admission made by Watson to Kremer, that at that time he was a member of the firm. But if, as seems to have been established, he was a member thereof, why should he not admit that fact even though its credit was not good? The offer must assume the very fact in controversy, otherwise it comes to nothing, and the determination of this controverted fact necessarily settles the contention, so that on either hand there is no room for the proposed evidence. Moreover, he had all the interest of a partner, whatever may have been his liability; he had put some twenty-five hundred dollars of his money into this partnership; had a general power of supervision over its affairs, and was to have thirty-three per centum of its profits; he was therefore as much interested in sustaining the credit of the house as either of the partners could have been, and if his admission tended, as it undoubtedly did, to sustain that credit, the probability is that he would make it. If, then, we are to deal with probabilities at all, they are certainly to be found as much on the one side as the other, and so the matter rests in *æquilibrio*. As to the question of the admission of the agreement of J. P. Reed & Co. with John B. Watson, July 15th, 1878, it will be best discussed from the presentation of it as found in the argument of the learned counsel for the plaintiffs in error. He says: "The third point is whether—when the question was—did the written contract with Reed, Crane & Co. represent the actual contract? Was it not admissible to show that Reed had a similar contract with Watson, and that Kremer was a party to it? It would have opened the door to inquiry, Was this also the real contract, or was that a secret partnership also?" It will be seen that the object was to introduce a contract with a company not in any manner involved in this case, and thus create a collateral issue which, after it was fully tried out, could in no legitimate manner affect the matter in hand. Suppose it had been admitted; what then? Would it have tended to rebut those facts which were necessarily proved in order to make Watson a member of the firm of Reed, Crane & Co., or to contradict a single word uttered by the plaintiff's witnesses? No such thing is alleged, nor could it so operate, for it belonged to a subject that had no relation whatever to the case trying.

The judgment of the court below is affirmed.