## J. M. BROWN v. M. BEECHER ET AL.

ERROR TO THE COURT OF COMMON PLEAS OF WARREN COUNTY.

Argued May 23, 1887—Re-argued May 30, 1888—Decided October 1, 1888.

1. A demise of land for a term of years, "with the sole and exclusive right and privilege, during said period, of digging and boring for oil and other minerals, and of gathering and collecting the same therefrom," conveys an interest in the land, a chattel real, but none the less a chattel: Duke v. Hague, 107 Pa. 57; Titusville Novelty Iron Works' Appeal, 77 Pa. 103; Kile v. Giebner, 114 Pa. 381.

2. Though such a leasehold be held by owners in undivided shares under instruments made to them in their individual names, yet, the property being a mere chattel, the owners, by associating as partners in its operation and development, may convert it into partnership assets; and such association may be established by evidence of the several admissions of the alleged partners, or of the admissions of one and the acts and declarations of the others: Reed v. Kremer, 111 Pa. 482.

3. Such a leasehold, so held and operated for partnership purposes, being part of the partnership property, an assignment by one partner of his share therein, without the knowledge and assent of the others, is subject to the equity of the latter to have the partnership debts then existing first paid out of the partnership assets: Chamberlain v. Dow, 16 W. N. 532.

4. This equity of a partner in the application of partnership assets to partnership debts (and the equity of the creditor arising out of it), is not defeated by the fact that the creditor's bond is held or his judgment entered against the members of the partnership as individuals, instead of in the firm name.

5. Nor is such equity affected when one partner has assigned his undivided share in the partnership leasehold, as a collateral security for the protection of a surety upon a bond given for the partnership debts before a sale made of the leasehold under a judgment on such bond.

6. The act of June 8, 1881, P. L. 84, "relating to and defining defeasances," etc., is applicable to deeds for real estate only, and not to an assignment of an interest in a leasehold as a collateral security; nor is it material that the instrument is not made and recorded in compliance with § 1, act of May 13, 1876, P. L. 160.

Re-argued before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 297 January Term 1886, Sup. Ct.; court below, No. 95 December Term 1883, C. P.

On November 7, 1883, a summons in ejectment was issued in an action by J. M. Brown against M. Beecher and W. H. Copeland, as Beecher & Copeland, and The First N. Bank of Warren, to recover the undivided halves of two oil-leaseholds in Mead township, known as leaseholds Nos. 46 and 47, each containing three acres, more or less. The plea was, not guilty.

At the trial on October 8, 1885, it was admitted by the abstracts that the lands on February 3, 1882, belonged in fee to C. A. Cornen and D. Cornen, who, on that date, "in consideration of the rents, reservations, covenants and agreements hereinafter mentioned and which on the part of the party of the second part are to be kept and performed," by two like indentures demised and let to G. W. Marsh, the party of the second part, the lands described in the writ, for the term of fifteen years from May 1, 1880, "with the sole and exclusive right and privilege, during said period, of digging and boring for oil and other minerals and collecting the same therefrom," upon the terms and conditions, inter alia, that the lessee, his heirs, etc., and assigns, should deliver to the lessors, their heirs, etc., and assigns, one half part of all the oil, gas or any valuable mineral or volatile substance discovered, excavated, pumped and raised, etc.; that on April 20, 1882, G. W. Marsh, by assignments under seal, indorsed upon the releases, transferred to John A. Brown, his heirs and assigns the one half interest in each of said leaseholds, "subject to all the agreements, covenants and conditions herein contained"; and that on May 20, 1882, the title to said leaseholds was in G. W. Marsh and John A. Brown.

The plaintiff put in evidence the records of the said leases and assignments (recorded May 25, 1882), and followed by the deed of John A. Brown to J. M. Brown, dated March 15, 1883, recorded May 18, 1883, conveying all the interest of John A. Brown in said leaseholds. Possession by the defendants having been proved by the writ and return, the plaintiff rested.

The defendant, in order to show that G. W. Marsh and John A. Brown composed a partnership firm to which the leaseholds belonged, and as a partnership were indebted to Beecher & Copeland, before the plaintiff bought the interest of John A. Brown, and that afterwards, while G. W. Marsh's

dominion over the leaseholds continued, a fieri facias was issued upon a judgment for this partnership debt, whereby Beecher & Copeland became entitled to Marsh's equity to insist that the leaseholds should go to pay Beecher & Copeland as partnership creditors, in preference to J. M. Brown, and that on this writ the leaseholds had been sold to one of the defendants, gave in evidence: (*a*) Note under seal with warrant of attorney made by G. W. Marsh, John A. Brown and W. C. Wolford, to Beecher & Copeland, dated July 4, 1882, at three months, and judgment entered thereon in favor of Beecher & Copeland on February 4, 1883, for $3,360; (*b*) a fieri facias on said judgment issued February 14, 1883, and an alias fieri facias on same issued May 8, 1883, and levy made thereon on May 15, 1883, upon the leaseholds in dispute; and (*c*) the sale of the leasholds on said last mentioned writ on June 30, 1883, to The First N. Bank of Warren.

G. W. Marsh, called by defendants:

Q. What were your relations with John A. Brown in regard to that property, in controversy?

Defendants' counsel propose to show, by parol proof, that the debt for which this note was given to Beecher & Copeland, was a partnership debt of the firm of Brown & Marsh, that is to say, the firm composed of John A. Brown and George W. Marsh, and that the property sold was the property of that firm at the time the execution came to the sheriff's hands, and at the date of sale. Objected to, as incompetent and irrelevant.

Objection overruled.[3]

Evidence was then adduced to support the offer and the defendants rested.

In rebuttal the plaintiff put in evidence the record of a deed from G. W. Marsh to W. C. Wolford, dated July 11, 1882, recorded September 18, 1882, by which the grantor had "this day sold, conveyed and delivered and given possession," to W. C. Wolford, his heirs and assigns, all the grantor's interest in a large number of leaseholds, including his one half interest in leases "given to G. W. Marsh from C. A. & D. Cornen;" this to show that after July 11, 1882, G. W. Marsh had no interest in the lands in controversy. The plaintiff again rested.

In sur-rebuttal, the defendants called G. W. Marsh:

Defendants' counsel offer to show by the witness that Wolford is his son-in-law and possessed of means, that the witness became involved in managing this property, and that Wolford became his surety, and that he transferred this property to him as security for his becoming surety, and not as an absolute transfer.

Objected to on the ground that the record still shows the title in Wolford, and it is not proposed to prove that it has been re-conveyed to Mr. Marsh, and the testimony is incompetent; also, objected to on the further ground that it is not in compliance with the legislation respecting leasehold mortgages, and hence the evidence is incompetent.

Objections overruled, testimony admitted. [G]

The witness testified in support of the offer, when the defendants closed.

The purport of other evidence adduced, not given above, sufficiently appears in the opinion of this court.

At the close of the testimony, it was agreed that the jury be withdrawn and the cause submitted to the court, upon the evidence already taken, to find the facts and conclusions of law, and to enter judgment thereon, under the act of April 22, 1874, P. L. 109.*

### FINDINGS OF FACT.

On November 23, 1885, after argument, the court, BROWN, P. J., filed the following findings of fact and law:

By two written agreements, both bearing date February 3, 1882, C. A. Cornen and D. Cornen leased the premises in dispute to George W. Marsh, his heirs, executors, administrators and assigns, for the term of fifteen years from May 1, 1880. The leases were " with the sole and exclusive right and privilege, during said period, of digging and boring for oil and other minerals, and of gathering and collecting the same therefrom." Each lease is for three acres of land in Mead township, Warren county, numbered respectively 46 and 47.

---

*This Statement of Facts follows very closely, in form and substance, the History of the Case printed by the plaintiff in error. Having the facts given by the findings of the court below, the Statement might have been materially condensed by the Reporter, but he desired to indicate what in his opinion was an admirable method of preparing a " History of the Case."

Findings by Court below.

On April 20, 1882, George W. Marsh assigned the undivided one half of the two leases to John A. Brown. [This assignment was pursuant to an arrangement between Marsh and Brown existing at the time Marsh obtained the leases.] [2] [George W. Marsh and John A. Brown were partners engaged in the business of prospecting for, and producing, petroleum, and upon and before March 15, 1883, were operating upon and developing the premises in controversy as partners, and the leases mentioned were part and parcel of the partnership property used in carrying on the partnership business.] [1]

On March 15, 1883, John A. Brown deeded to the plaintiff, J. M. Brown, all his interest in the premises for the consideration of $2,000, to apply on a larger indebtedness of John A. Brown to the plaintiff, which deed was recorded May 18, 1883.

[In operating upon and developing the premises in dispute with other property of the firm, Marsh & Brown incurred a partnership debt to the defendants, M. Beecher and W. H. Copeland, dealers, in the name of Beecher & Copeland, in hardware and oil well supplies, etc. This indebtedness was incurred in the firm name of Marsh & Brown, and was a partnership debt.] [4]

On July 4, 1882, G. W. Marsh, John A. Brown and W. C. Wolford gave a judgment bond to the defendants, Beecher & Copeland, for the sum of $3,200, being the amount of the debt due from Marsh & Brown. On February 3, 1883, judgment was entered on this note for, including attorney's commissions, the sum of $3,360. On February 14, 1883, a fieri facias was issued on the judgment, returnable to the first Monday of March, which was returned by order of plaintiff's attorney. On May 8, 1883, an alias fieri facias was issued, which was received by the sheriff on the same day at 5 o'clock 40 minutes P. M. On May 15, 1883, the sheriff made a levy upon the two leases, the property in dispute, together with their equipments of carpenter's rigs, engines, boilers, tanks, tubing, casing, and other property. On June 30, 1883, the sheriff made sale of the property levied upon to the defendant, The First National Bank of Warren, the judgment having previously been assigned to said bank. The defendants are in possession and claiming title and right by virtue of the sheriff sale.

W. C. Wolford, who signed the judgment bond with Marsh

and Brown, did so as the surety of Marsh and Brown, or rather as the surety of Marsh, and [on July 11, 1882, Marsh assigned, by instrument recorded September 18, 1882, all his interest in the property in dispute to Wolford, as collateral security for money advanced, and as collateral security for signing the judgment bond to Beecher & Copeland.] [7] [Wolford never took possession of the interest thus assigned to him,] [8] and never assumed any management or direction of the business. The property continued in the same custody and under the same management after the assignment to him as before.

John A. Brown is the brother of the plaintiff. The transfer of his interest to the plaintiff, made on March 15, 1883, was without the consent or knowledge of Marsh, and the property continued in the same custody and under the same management after such transfer to plaintiff as before. Whether the plaintiff actually knew, when he took the transfer of his brother's interest, that the relation of partnership existed between his brother and Marsh, and that the property in suit was partnership property, does not appear by any direct testimony ; but we find that he did so know from the testimony of Marsh and the cross-examination of the plaintiff, taken in connection with the fact that he knew, or ought to have known, that the leases were but chattels, and that he had abundant opportunity to know the nature and character of the business in which Marsh and his brother were engaged, and abundant opportunity to learn the fact hereinbefore found, viz.: That the property in suit was the partnership property of George W. Marsh and John A. Brown, and so used by them in carrying on their partnership business.

Plaintiffs' points:

1. The equity which one partner has to apply partnership assets to the payment of partnership debts, ceases when he ceases to have dominion over and control of the partnership effects, and he may waive such right by permitting the partnership effects to be applied to a different purpose.

Answer: Affirmed.

2. That J. M. Brown, the plaintiff, purchased his interest and acquired his rights in question, with record notice that Marsh had sold his interest in the joint effects of Marsh and John A. Brown to Wolford, absolutely, and Marsh cannot now

show, by parol, such absolute conveyance to be a security merely, and thereby effect said J. M. Brown's rights so acquired.

Answer: Refused.

3. That when the levy and sale were made under which defendants claim, there were no assets of Marsh and John A. Brown, jointly, or as a firm, out of which either of them could ask to have their joint debts paid, as each had, prior to said levy and sale, disposed of his interest in the joint effects.

Answer: Refused.

4. That even if Marsh can show, as against J. M. Brown's rights, that his conveyance to Wolford is a security merely, he still is in no position to enforce the equity set up, for the reason he has lost control of his interest in the joint effects, and the power to apply it to joint debts, by conveying it to Wolford as a security, which security Wolford still holds to indemnify him against his existing liability for Marsh, and this with the agreement of Beecher & Copeland.

Answer: Refused.

5. That if Marsh and John A. Brown were partners in regard to this property, Marsh. and J. M. Brown were equally so after the purchase by J. M. Brown, for the reason that the business was carried on after his purchase as before, until defendants took possession of the property. That if Marsh desired to enforce the equity now claimed, he should, when J. M. Brown purchased the interest of John A. Brown, have wound up the business of the firm of Marsh & Brown and liquidated the firm debts, and in not doing so, but allowing the business to proceed after J. M. Brown purchased, as before, Marsh waived his equity, and the assets became the property of Marsh and J. M. Brown.

Answer: Refused, inasmuch as the evidence and the matters recited fail to show any waiver by G. W. Marsh of his right or equity to have the partnership assets applied to the partner· ship debts.

6. That the evidence does not prove Geo. W. Marsh and John A. Brown were partners as regards the property in question.

Answer: Refused.

7. That under all the evidence the plaintiff is entitled to recover.

Findings by Court below.

Answer: Refused.[22]

8. The writ of Beecher & Copeland being against Marsh, Brown & Wolford, and the property sold thereon being their property so far as the return is concerned, defendants are bound by such evidence of debt and return, and cannot contradict the same by showing the debt was a partnership debt, or the property sold partnership assets.

Answer: Refused.

Defendants' points:

1. The title conveyed by J. A. Brown to the plaintiff of his interest in the leasehold held and owned by Marsh & Brown, was subject to the paramount lien of the debt of said firm of Marsh & Brown to Beecher & Copeland, and the sale of the property upon a judgment for said debt to the defendant, carried the title to the entire property so sold to them, and the plaintiff cannot recover.

Answer: Affirmed.

2. The judgment upon which the property in controversy was sold by the sheriff and purchased by defendants, having been for a partnership debt, and the property sold being partnership assets, it was sufficient to convey the title, that the judgment was against said Marsh & Brown in their individual names.

Answer: Affirmed.

3. From all the evidence in the case the plaintiff cannot recover.

Answer: Affirmed.

## CONCLUSIONS OF LAW.

Having found the existence of a partnership between G. W. Marsh and John A. Brown, and that the premises in dispute were the partnership property, and the judgment of Beecher & Copeland the partnership debt of that firm, and having found that when John A Brown conveyed or transferred his interest to the plaintiff, Marsh had the right to insist that the property of the firm should go to the payment of the firm debts, and that such right continued unimpaired to the time when the execution in favor of Beecher & Copeland came to the hands of the sheriff, and to the time of the levy and sale thereon, the conclusion, we think, follows that the sheriff's

sale to The First National Bank vested a good title to the entire property in dispute.

If no exceptions to the foregoing findings of fact or conclusions of law are filed in the prothonotary's office within thirty days after service of notice of this decision on the parties or their attorneys, the prothonotary will enter judgment in favor of the defendants.

On December 9, 1885, the plaintiff filed exceptions, which inter alia alleged error:

3. In the finding of fact embraced in [ ] [2]

4. In the finding of fact embraced in [ ] [1]

6. In the finding of fact embraced in [ ] [4]

7. In not finding that the assignment made on July 11, 1882, from Marsh to Wolford, was by deed absolute in form, wherein the possession is expressly "delivered and given" to Wolford, duly acknowledged and recorded. [5]

9. In the finding of fact embraced in [ ] [7]

10. In the finding of fact embraced in [ ] [8]

11. In not finding that by the deed from Marsh to Wolford, on July 11, 1882, Marsh parted with all his dominion over the leases or any part thereof.[9]

On January 4, 1886, after argument of the foregoing exceptions, the court filed a supplementary finding of facts not material to the cause as here decided, and ordered judgment to be entered according to the opinion previously filed.

Judgment having been entered in favor of the defendants, as directed, the plaintiff took this writ, specifying as error, inter alia:

1, 2. The overruling of plaintiff's 4th and 3d exceptions.[1] [2]

3. The admission of defendants' offer.[3]

4, 5. The overruling of plaintiff's 6th and 7th exceptions.[4] [5]

6. The admission of defendants' offer.[6]

7–9. The overruling of plaintiff's 9th, 10th and 11th exceptions.[7 to 9]

22. The answer to the plaintiff's 7th point.[22]

*Mr. J. H. Donly* and *Mr. W. W. Wilbur*, for the plaintiff in error:

1. " The principle which enables partners to pledge to each

other the joint effects as a fund for the payment of the joint debts, . . . . springs from the nature of the contract between the partners themselves : " Doner v. Stauffer, 1 P. & W. 204. If no contract between the partners themselves was ever made, this equity cannot arise ; and, when persons seek to establish a partnership between themselves, they are held to strict proof, " because they are conusant of all the means whereby the fact of partnership may be proved : " 2 Greenl. Ev., § 483. So are they who stand in their shoes to enforce their equities. Marsh was a witness for defendants, thrice called, and if by any word or act he ever consented to be a partner with Brown, he could have so stated. Nor was there sufficient evidence to show a holding out as partners ; even if there had been, out of a mere partnership as to third persons no equities between the parties themselves can arise.

2. But, assuming that Marsh and Brown composed a partnership firm, could the defendants show, contrary to the recorded conveyances, that the leaseholds belonged to that firm ? The title was not obtained with the firm's money, nor is it in the firm's name ; it was to the parties individually and contained upon its face no assertion that the lands were to be treated as partnership property, and, where the question is one affecting purchasers or lien creditors, this fact is conclusive. But, say defendants, these leasehold interests are not land ; and they rely upon a line of adjudications founded upon leases or grants, from which the word " exclusive " is absent in the grant of the right or privilege, to wit : Chamberlain v. Dow, 16 W. N. 532 ; Thompson's App., 101 Pa. 232 ; Funk v. Haldeman, 53 Pa. 229. The words " sole " and " only," in these leases, limit and restrict the lessee's right, while the word " exclusive " enlarges it by excluding the right of every other person, thus passing, not a mere right to take oil, an incorporeal interest, a chattel right, but the exclusive right, during the term, to take the oil, which is a corporeal interest in land : Duke v. Hague, 107 Pa. 65 ; Chicago & Allegheny O. & M. Co. v. U. S. Petroleum Co., 57 Pa. 83. The leases in question, therefore, passing corporeal interests in land, and the records showing that one moiety was conveyed to Brown, leaving the other in Marsh, with " no assertion that they were to be treated as partnership property," were as to the plaintiff, a purchaser, conclusive : Ridgway's

App., 15 Pa. 177 ; Holt's App., 98 Pa. 257 ; Shafer's App., 106 Pa. 54.

3. The defendants proposed to prove by parol that the leasehold belonged to the firm. The offer was objected to as incompetent and irrelevant. No leases, estates or interests, either of freehold or terms of years, of, in, to, or out of, any lands, shall at any time be assigned unless by deed or note in writing, signed by the party so assigning : § 1, act of March 21, 1772, 1 Sm. L. 389. Proof by writing, and even of record, is more rigidly required in conveyances to partnerships, than in other sales : McCormick's App., 57 Pa. 54. Yet the defendants failed to give any evidence showing how the title became vested in the firm, although permitted to do so against the objection made.

4. While partners retain dominion over the firm property, they may insist upon its application to firm debts. But when they mean to insist upon their equities as partners, they should manifest that intention in the form of the instrument employed: Vandike's App., 57 Pa. 9. Here the judgment obligation was signed by three men who never were partners, each attaching his seal. But the functions of a partner are never exercised under seal, and, as the so-called partners did not insist upon this equity, neither can their so-called firm creditors : Lefevre's App., 69 Pa. 122. The judgment, then, was simply against the three defendants in their individual characters ; the fieri facias followed the judgment ; under it the sheriff could levy upon and sell only the respective interests of the defendants in the property ; and, when the writ issued, the only defendant who had any title was Wolford, and it was his half only on which the sale could operate, leaving the undivided half claimed by the plaintiff unaffected by the sale.

5. The interests conveyed being corporeal interests in land, the act of June 8, 1881, P. L. 84, applies, and parol evidence is insufficient to convert the absolute deed into a mortgage. If not within that act, the case is within the provisions of § 8, act of April 27, 1855, P. L. 369, and § 1, act of May 13, 1876, P. L. 160, requiring that a leasehold mortgage be recorded with the lease, and making distinct reference to the book and page where the lease is recorded. Moreover, if by parol this deed could be changed into a mortgage, no competent evi-

dence for this purpose was produced. To change an absolute deed into a mortgage, an agreement for a defeasance is necessary. Was there any agreement for a defeasance here? But even if a mortgage, under it the dominion of Marsh would be as completely gone as under an absolute conveyance, for a mortgage of a leasehold is in law equivalent to an assignment of it: Becker v. Werner, 98 Pa. 560.

6. The court has not found that the firm was bankrupt or insolvent, and a fact not found will be taken not to exist: Sweigard v. Wilson, 106 Pa. 207. The rule that partnership stock shall first be applied to pay partnership debts, holds only in the cases of bankruptcy and actual insolvency when an execution issues against one partner: McKean, J., in McCarty v. Emlen, 2 Y. 192; Black's App., 44 Pa. 509; Gallagher's App., 5 Cent. R. 725.

*Mr. S. T. Neill* and *Mr. Chas. Dinsmoor* (with whom were *Mr. R. Brown* and *Mr. Chas. W. Stone*), for the defendants in error:

1. The repeated acts as well as the declarations of the parties evidence a partnership understanding between them, and there are in the books cases without number in which much less evidence of a partnership has been rightly submitted to a jury.

2. Conceding that the property in controversy has the characteristics of real and not of personal estate, or, in other words, that it is land, does it follow that it is so far changed in its qualities as to be beyond the rule governing the marshaling of assets? It is a fact and was so found, that these leases were obtained in pursuance to and in consequence of the partnership arrangement. While Marsh had the title to them, it was in trust for the firm: Lacy v. Hall, 37 Pa. 360; Erwin's App., 39 Pa. 535. The subsequent conveyance of a moiety to Brown, did not change or destroy the character of the previous trust for the firm while the title was in Marsh. This conveyance while the firm was in operation and pursuing its business, was simply to define or measure the extent of the interest of each in the firm property. "As between partners themselves, real estate may in some cases be shown to be firm property, notwithstanding the title may be to one of them

only, or to all in form as tenants in common :" Shafer's App., 106 Pa. 54. But the plaintiff has no right to complain, for if the interest of Marsh & Brown were an interest in land, and realty, it would have been subject to the lien of Beecher & Copeland's judgment and liable to be sold thereon.

3. It cannot be said that the use of the word " exclusive," in describing the privilege of the lessee under a mining lease, has any peculiar effect in changing the character of his estate or interest. That word in this lease was manifestly for no other purpose than to prevent the lessor from mining and from giving the license to another; it did not change the character of the right into a corporeal interest: Silby v. Trotter, 29 N. J. Eq. 228; Grubb v. Bayard, 2 Wall. Jr. 81; Funk v. Haldeman, 53 Pa. 229; Stockbridge Iron Co. v. Hudson Iron Co., 107 Mass. 290, 322. Some confusion as to the character of the estate held by a lessee under the ordinary oil lease, has been produced by Stoughton's App., 88 Pa. 199, in which the oil was treated as a mineral and the lease as the conveyance of an interest in the land; but, whatever may be deduced from the cases, the use of the word " exclusive " has not materially changed the character of the estate of these lessees. It was a chattel interest: Titusville Novelty Iron Works' App., 77 Pa. 103, and the case is clearly ruled by Chamberlain v. Dow, 16 W. N. 532, wherein it was held that the leasehold was a chattel interest and that the plaintiff could not recover.

4. The facts found in connection with the transfer of Marsh's interest to Wolford, instead of destroying the equities of Beecher & Copeland, as partnership creditors, to have the property of Marsh & Brown made subject to the payment of their judgment, make it clear that it was rather intended to accomplish and secure just that very result. Wolford was a mere surety for Marsh & Brown to Beecher & Copeland, and he would not be allowed, even if so disposed, to divert the property from the creditor for whose claim he was surety: Bispham's Equity, § 337. But the court found upon undisputed testimony that this transfer was intended as a mere security, and, being upon a leasehold, it was not within the provisions of the act of June 8, 1881, P. L. 84, as to mortgages upon real estate between debtor and creditor.

5. It is found as a fact that the judgment upon which the

sale was made was for a partnership debt. The form of the judgment and execution is immaterial: Chamberlain v. Dow, 16 W. N. 532; Overholt's App., 12 Pa. 222.

OPINION, MR. JUSTICE CLARK:

The contract of February 3, 1882, between Cornen and Marsh, is not a mere license as in Funk v. Haldeman, 53 Pa. 229, for in that case the words of the grant amounted neither to a lease nor a sale of the land, nor of any of the minerals in the land. Funk's right was therefore declared to be a license to work the land for minerals, a license coupled with an interest which the licensor could not revoke. Nor does the contract of February 3, 1882, import a sale of all the oil, gas and other minerals in the land, absolutely; the cases of Caldwell v. Fulton, 31 Pa. 476; Sanderson v. City of Scranton, 105 Pa. 469, and others involving the same principle, do not therefore have any application.

The contract referred to was a lease of the lands for a specified term, and for a particular purpose, at a fixed rent or royalty reserved out of the production. As to the legal force and effect of this writing there can, we think, be no doubt: it conveyed an interest in the land; in this respect it is distinguished from a license. It is similar to the lease in Stoughton's Appeal, 88 Pa. 198, but the lease in that case was executed by a guardian, and it was held, that although a guardian might lease his ward's land from year to year in the usual form for ordinary purposes, he could not, without the decree of the Orphans' Court, bind his ward by a lease of the land for oil purposes for twenty-one years; for that was practically the sale of the oil. But although the writing of February 3, 1882, is a lease, it conveyed to Marsh an interest in the land, a chattel interest, however; the lease was a chattel real but none the less a chattel: Duke v. Hague, 107 Pa. 57; Titusville Novelty Works' Appeal, 77 Pa. 103; Kile v. Giebner, 114 Pa. 381.

On the part of the defendants, it is contended that when Marsh transferred an undivided half interest in the lease to John A. Brown, they were and for some time before that had been partners, in the business of boring wells and producing oil; that the lease, being a chattel merely and used and operated for partnership purposes, was part of the partnership prop-

erty; that when John A. Brown subsequently assigned his moiety to the plaintiff, the latter must be assumed to have taken it subject to the equity of Marsh, to have the partnership debts first paid out of the partnership assets; and that as the Beecher & Copeland judgment was for a partnership debt, a levy and sale thereon passed the entire leasehold to the purchaser.

At the trial, after the testimony was taken, a juror was withdrawn by consent, and the cause was submitted to the court upon the evidence under the provisions of the act of April 22, 1874. The facts found by the court, where there is evidence to support them, are conclusive here; the case must be disposed of thereon as upon a special verdict: Sweigard v. Wilson, 106 Pa. 207,

The court finds that on April 20, 1882, Marsh assigned the undivided one half of the two leases to John A. Brown, and that this assignment was pursuant to an arrangement between Marsh and Brown existing at the time Marsh obtained the leases; that Marsh and Brown were partners, engaged in the business of prospecting for and producing petroleum, and upon and before March 15, 1883, were operating and developing the premises in controversy as partners, and that the leases mentioned were part and parcel of the partnership property used in carrying on the partnership business. It is contended however, that the court cannot find a fact upon evidence which is insufficient to justify a submission to the jury, and that there is no evidence sufficient to support this finding. The testimony on this subject is substantially as follows: Mr. Marsh testifies, that he obtained the lease in February or March, 1882; that John A. Brown acquired his interest in the property from the commencement; that Brown wished Marsh to take the property and buy the goods in his name, as Brown had some debts standing against him in Kittanning; that they were to be equal owners in the property, and share the profit and loss; that when they began developing the property he understood they were to go in partnership. He further testifies, that the transfer of the one half of the lease to John A. Brown was at the instance of J M. Brown, who said that the debts in Kittanning would not interfere with John's owning the property in his own name now, and that if he was a part-

ner he ought to have the property conveyed to him. Mr. Copeland, in corroboration of Marsh, says that Brown and Marsh dealt jointly with Beecher & Copeland since the fall of 1881; that they drilled three wells at Clarendon, two in Glade, one in Kings Hollow and one at Slator's in Limestone; that they bought oil well supplies, tubing, casing, drive pipe and such material; that the accounts were originally in the name of Marsh, but about the middle of March, 1882, John A. Brown's interest became manifest, when the account was merged into Marsh & Brown; he says Brown acknowledged owning half the property and that he was a partner with Marsh; that the indebtedness for which the note was given was incurred in the name of Brown & Marsh, and the purchases were made sometimes by one and sometimes by the other. It is further shown that the business was conducted by them as partners, that the production in oil was applied to the firm debts, debts in connection with the Cornen lease, and that they were sued in the firm name of Brown & Marsh, for debts arising out of the same lease, and that the process was served in this form without objection of either.

There is abundant evidence upon which the facts found by the court might have been submitted to the jury; not only so, it was clear, consistent and wholly uncontradicted. It was not required of the defendants to show by direct and positive proof the exact time, or by what means, the leaseholds were taken into the partnership or to introduce the precise act or ceremony by which it was done; it was sufficient if from all the evidence the fact was fairly inferable. The fact that there is a partnership may be established by the several admissions of those who are alleged to compose it, or by the admissions of one and the acts and declarations of the others: Reed v. Kremer, 111 Pa. 482. There was certainly evidence of a partnership and of these leases having gone into the partnership stock, which it would have been manifest error for the court to withdraw from the jury. The writings were in their individual names, but the property was a mere chattel, and if the parties by parol associated themselves as partners, for the purpose of developing and operating it for the production of oil, it might thereby be converted into partnership assets, for the payment of the partnership debts: Patterson v. Silliman, 28

Pa. 304.   The cases cited by the plaintiff's counsel, Ridgway's Appeal, 15 Pa. 177; Holt's Appeal, 98 Pa. 257 ; and Shafer's Appeal, 106 Pa. 54, have no application to mere chattel interests in land, and are wholly inapplicable to this case.   We think the court was right in holding that under the evidence these leaseholds had been treated as partnership property and were properly so considered.

It is clear, too, that J. M. Brown according to his own testimony knew Marsh and Brown to be operating the Cornen leases as partners, and that they were indebted as partners, not only to Beecher & Copeland but to other parties.   He told Marsh if John was a partner, he ought to have the property conveyed to him and the conveyance was made accordingly. Upon this branch of the case the court says: "Whether the plaintiff actually knew, when he took the transfer of his brother's interest, that the relation of partnership existed between his brother and Marsh, and that the property in suit was partnership property, does not appear by any direct testimony; but we find that he did so know, from the testimony of Marsh and the cross-examination of the plaintiff, taken in connection with the fact that he knew, or ought to have known, that the leases were but chattels, and that he had abundant opportunity to know the nature and character of the business in which Marsh and his brother were engaged, and abundant opportunity to learn the fact hereinbefore found, viz : that the property in suit was the partnership property of George W. Marsh and John A. Brown, and so used by them in carrying on their partnership business."

The court further found, that "in operating upon and developing the premises in dispute with other property of the firm, Marsh and Brown incurred a partnership debt to the defendants, M. Beecher and W. H. Copeland, dealers, in the name of Beecher & Copeland, in hardware and oil well supplies, etc. This indebtedness was incurred in the firm name of Marsh & Brown and was a partnership debt."   The testimony upon which this finding is based has already been referred to.   It is immaterial that the judgment of Beecher & Copeland was entered against Marsh and Brown, in their individual names; if the debt was in fact a partnership debt, Marsh would not be deemed to have waived his equity as a partner, by signing his individual name to a judgment note as a security for the debt.

The transfer by John A. Brown to his brother was made without the consent or even the knowledge of Marsh, and the property continued in the same custody and under the same management after as before. J. M. Brown will therefore, in the first instance, be presumed to have taken the transfer from his brother, John A. Brown, subject to the payment of the partnership debts; it was Marsh's right to insist upon this, and this gives rise to the equity of the partnership creditors. The case is similar in most respects to Chamberlain v. Dow, 16 W. N. 532. The facts in that case run parallel with the facts here ; precisely the same questions of law are involved , if that case was rightly decided, the principles there declared must govern in the determination of this case upon the questions we have already passed upon.

There is, however, another feature of this case to which we have not yet adverted. Wolford, who, on the 4th of July, 1882, at the instance of Marsh, became surety in the judgment of Beecher & Copeland, on the 11th of the same month, took an assignment from Marsh, inter alia, of all the interest in the Cornen leases ; the assignment purported to be on a sale for a money consideration. The plaintiff's contention is, that Marsh by this means lost his dominion over the property and his status as a partner, and that therefore he had no equity, which either he or his creditors through him could set up at the time of the sheriff's sale, to have the entire partnership interest sold for the payment of the partnership debts. The evidence would seem clearly to establish, however, and the court found, that the transfer was not an absolute one; that it was given as a security or indemnity merely, and that Wolford never took possession of the interest assigned and never assumed any management or direction of the business. On the contrary, the property continued in the same custody, and under the same management, after the transfer, as before ; the assignment by Marsh did not convey to Wolford the property of the firm with any right or dominion over it ; he pledged his interest, as it might ultimately appear, as an indemnity merely to Wolford against loss on his suretyship.

Marsh still retained his interest as a partner, and continued to exercise dominion and control over the property. Upon this subject the testimony is clear, explicit and unequivocal;

it is wholly uncontradicted; there is not a single fact, outside the form of the deed, in conflict with this view of the case. It is immaterial that the instrument was not made in compliance with the legislation respecting leasehold mortgages. Although a deed in form, in effect it was only a pledge of Marsh's interest, as it might appear on settlement of their accounts; Marsh could not, and therefore did not, deliver the possession of the lease, for it was part of the firm effects and so beyond his individual control. Under these circumstances we think he did not part with his equity, and that the firm creditors, afterwards working out that equity through him, had a right to, and did, sell at the sheriff's sale, the entire title in the Cornen leaseholds for the payment of their debt.

The act of June 8, 1881, relating to and defining defeasances, etc., applies to deeds for real estate only. As we have already said, the leases from Cornen conveyed an interest in land, but a chattel interest only. A lease for years is personal, not real estate; at the decease of the lessee it passes, not to the heir, but to the administrator, as personal assets for the payment of debts. Upon a full consideration of the whole case, we are constrained to say that the re-argument of this case has not changed our views, in regard to it, and therefore,

The judgment is affirmed.