## Duke *et al.* *versus* Hague.

1. Under the Statute of 32 Henry VIII., c. 32 (reported by the judges to be in force in Pennsylvania) tenants in common, who hold an estate for life or years, may compel those having the estates of freehold or inheritance to make partition, but such partition shall not prejudice or injure the interest of any one not made a party thereto.

2. A lease for twenty years " of the exclusive right for the sole and only purpose of mining and excavating for petroleum, rock, or carbon oil " in the one half part of a certain tract of land " in alternate quarters," the lessors reserving for tillage and lumbering purposes the improved land and the use of all other land not necessary for producing oil, and further reserving certain royalties, vests in the lessee an estate for years, and not a mere license on the land demised, and such lessee is entitled to notice of a partition by the owners of the fee, whether such partition be by action at law or by amicable agreement, and the lessee will not be bound by such partition, if it divides the land to his injury, unless he has had notice thereof or been made a party thereto.

3. The said lease was made by the tenants in common owning the fee of certain tracts of land. Subsequently, the undivided one fourth interest owned by one of said tenants was sold under a mortgage, which had been recorded prior to the execution of the lease. The remaining owners of the fee, together with the purchaser under the mortgage, who had notice of the lease, without notice to or the knowledge of the lessee, amicably agreed to a partition of the land, which divided the tract to the injury of the lessee, and the purchaser under the mortgage sold his purpart to third parties. In an action of ejectment by said third parties against the lessee to recover the possession of the land so purchased by them :

    *Held*, that the lessee was not bound by the said partition, and the plaintiffs could not recover.

4. McKee *v.* Straub, 2 Binney, 1, commented upon ; Long's Appeal, 27 P. F. S., 151, and Mark *v.* Mark, 9 Watts, 410, distinguished ; Chicago & Allegheny Mining Co. *v.* U. S. Petroleum Co., 7 P. F. S., 83, followed.

May 29, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ. GREEN J., absent.

ERROR to the Court of Common Pleas of *Warren county :* Of January Term, 1884, No. 371.

This was an action of ejectment, brought by William Duke, Joseph Duke, Elias Harrison and Henry Johnson against W. W. Hague to recover a tract of land in Warren county.

By agreement of the parties, trial by jury was waived and the case was tried under the Act of April 22, 1874, by OLMSTED, J., of the Fourth Judicial District. The following were his findings of fact and conclusions of law :

Joseph Hall, the common source of title, on the 8th day of February, 1870, conveyed to John Hill, A. B. Butterfield, E. L. Butterfield and E. G. Wood a large number of tracts of

land, including the land for which this ejectment was brought; subsequent to the date of the above-mentioned deed the undivided one fourth interest of E. G. Wood became vested in A. B. and E. L. Butterfield. On the 30th day of August, 1877, A. B. Butterfield, E. L. Butterfield and John Hill joined with one Clapp and others in a lease, for oil purposes, recorded March 29th, 1878, of a large number of tracts of land, including the one in controversy, to William Hague, the defendant, the lands being described in said lease as follows: "*Being one half of lots* Nos. 160, 110, 102, 202, 164, 163, 201, 83, 111, 158, 159, 200, 100, 101, 103, 113, 112, 109, 108, 155, 161, 165, 166, 168, 169, the east half of 199, west half of 204, also the undivided one half of lot 2837, containing 903¼ acres, also the island and banking ground at Hertzel's ferry. The second party to have one half of the above lots in alternate quarters." The purposes for which said lands were leased to said William Hague were set forth in said lease as follows:

"Have granted, demised and let unto the said party of the second part, his executors, administrators and assigns, the exclusive right for the sole and only purpose of mining and excavating for petroleum, rock or carbon oil. To have and to hold the said premises exclusively for the said purpose only, unto the said party of the second part, his executors, administrators, or assigns for and during the full term of twenty years."

The defendant (Hague) began operations on a portion of said lands within ten or twelve days after the date of the lease, and has continued his operations for oil purposes upon some portion of said lands up to the commencement of this action, putting down, completing and operating ten or twelve wells, and has complied with all the terms and conditions of the lease. At the time the defendant commenced to put down the first well under his lease it was verbally agreed between him and his lessors that the several tracts leased should be divided into quarters, and that the defendant should have the northeast and southwest quarters of said tract for his operations; the defendant's operations since have been carried on in accordance with this verbal agreement upon the portions of the several tracts allowed to him, and the land in controversy is the southwest quarter of tract 108. It is under this lease that the defendant claims the right to the possession of the land claimed by the plaintiffs in this action.

On the 24th day of February, 1873, one of the defendant's lessors (John Hill) executed and delivered a mortgage to James A. Knowlton upon his then undivided one fourth in-

terest in the lands as purchased by him in common with the two Butterfields and E. G. Wood, to secure the payment of the sum of $20,000. This mortgage was foreclosed by scire facias, and the undivided one fourth interest of John Hill in said land, including the 50 acres in controversy, became vested in James A. Knowlton, by sheriff's deed, on the 10th day of March, 1880 ; and on the 15th day of June, 1880, James A. Knowlton conveyed to Willard White all the interest acquired by him in all the lands formerly conveyed by Hall to Hill, et al. This last conveyance vested in Willard White a clear, unincumbered title in fee simple to the undivided one fourth of all the lands originally conveyed by Hall as a tenant in common with A. B. Butterfield and E. L. Butterfield, (said Butterfields having formerly acquired the title of E. G. Wood), Hague, the defendant, still holding the lease of the undivided three fourths owned by the Butterfields. The lease was discharged from the one fourth interest formerly owned by Hill, (now Willard White), by the sale upon the mortgage.

On the 12th day of July, 1880, Willard White and A. B. Butterfield, and E. L. Butterfield, the owners of the fee, made an amicable partition of all the lands. By the terms of this partition it was first agreed that White should have the northwest quarter of each tract, the Butterfields to take the other parts. One hundred and forty acres of the property, part of tracts Nos. 164 and 201 were improved, and had a mill upon them worth $10,000, together with some personal property. The mortgage given by Hill to Knowlton in terms covered the machinery, lumber, and all personal property about the mill. As a part of the terms of partition, White agreed to release all his right to the 140 acres of improved land, the mill building and personal property, in consideration of which the Butterfields agreed to release all their interest in the whole of tracts Nos. 108 and 2837 to White. In pursuance of this amicable partition White, by deed bearing date July 12, 1880, released and quit-claimed all his interest in the east one half and the southwest one fourth of all the tracts except Nos. 108 and 2837, also all his interest in the 140 acres in Tiona, to include the improvements and oil wells thereon, and all the buildings and saw mill, and his interest in all the machinery of every kind and personal property. The two Butterfields, by deed bearing the same date, released and quit-claimed to White all their interest in the whole of tracts Nos. 108 and 2837, and in the northwest one fourth of all the other tracts. On the 30th day of December. 1880, the plaintiffs in this action pur-

chased of Willard White fifty acres, the southwest corner of tract No. 108 (the land in controversy) in fee.

Hague was not a party to the partition of July 12, 1880, between the Butterfields and White, and had no notice of it. White had notice at the time of this partition of Hague's lease, and also of the verbal agreement under it, by which Hague was to operate on the northeast and southwest quarter of each of the tracts. After the partition, White said to Hague, "You are now my lessee of tract No. 108; I would like to have operations commenced." At the time of the partition Clapp, one of the lessors, told White that if they (the Butterfields) accepted his (White's) proposition, it must be subject to the Hague lease, to which White replied that he could get along with Hague. Subsequent, however, to this conversation, and before Hague had commenced operations on tract No. 108, White notified him not to do anything upon the property in controversy, and forbade Hague's employees putting up derricks and making other expenditures upon this lot. In January or February, 1881, six months after the partition, Hague commenced operations upon the 50 acres in controversy, and has continued operations thereupon for oil purposes up to the commencement of this action.

The following were the conclusions of law: Hague's lease, which was discharged from the undivided one fourth interest in the land in controversy, still remains upon the undivided three fourths interest in said land; [Hague, the defendant, was not bound by or affected by the amicable partition of July 12, 1880, between Willard White and the Butterfields, he having no notice of the said partition.]

We are not without doubt of the correctness of this proposition. The case is anomalous, and but little direct authority can be found upon the main question involved. The action of partition seems not to have had existence in England until the passage of the Act 31 Henry VIII., which granted the right in certain cases therein enumerated, followed by the Act of Parliament of 32 Henry VIII., chap. 32, which extended the right to cases of tenants in common, when one or some of them have but a particular estate for a term of life, or years, and the other have estate or estates of inheritance. This latter Act contained this proviso: " Provided: That no such partition or severance hereafter to be made by force of this Act be nor shall be prejudicial or hurtful to any person or persons, their heirs or successors, other than such which be parties unto the said partition, their executors or assigns." These statutes were reported by the judges as in force in Pennsylvania: Roberts' Digest, British Statutes, 225. The statute of this Commonwealth of 25th April, 1850, requires

all parties *in interest*, to be named in the writ, when known, and when unknown, to be warned by publication. This statute also provides that partition may take place between the parties approving, and the residue of the premises remain for future partition. The courts of Pennsylvania have uniformly held *amicable* partitions fairly and equitably made, as conclusive upon the *parties and privies* as though decreed by a court of competent jurisdiction: Rhoads's Estate, 3 Rawle 435; Kennedy v. Kennedy, 7 Wright 414. No person having an estate in land is bound by a judgment in action of partition, unless he has been summoned in the action, or has had in some manner a day in court. This is the unmistakable teaching of the statutes before referred to, and is the doctrine of the text books. To give validity and effect to a partition, all persons interested should be made parties to the proceedings. Such persons, and none others, would be bound by the judgment: 1 Washburn on Real Property, 682; Thompson and Wife v. Stitt, 6 P. F. Smith 156; McKee v. McKee, 2 Harris 237. The judgments of all courts are absolutely *void* when rendered without citation, trial or opportunity of hearing: Commonwealth v. Green, 4 Wharton 568; Blackwell v. Cameron, 10 Wright 236. "Where action is brought for a partition, either by joint tenants or tenants in common, as mutual conveyances are decreed, all persons necessary to make such conveyances must be parties to the suit; and where one tenant in common had granted a lease of his share for a long term of years, the *lessee* was held to be a necessary party to the suit:" 1 Daniels, Ch. Pr. 178; Woodworth v. Campbell, 5 Paige 518.

It will hardly be contended that a person vested with such interest or estate in realty, as requires notice to him of a suit in partition, in order to affect his interest by the judgment in such suit, can be affected by an amicable partition injurious to his rights, made secretly by the owners of the fee. It does not appear to the court that any device or arrangement made by the owners of the realty, ought to discharge the grasp of this lease upon any part of the land upon which it had been laid, or divert its operations from one tract to another. [The lease was for a tangible, corporeal product of the land, and consequently, as Hague had the exclusive right, was an interest in the land itself:] Chicago & Allegheny Oil & Mining Company v. The U. S. Petroleum Company, 7 P. F. Smith 83. A mining lease is an interest or estate in land: Titusville Novelty Works' Appeal, 27 Smith 107; Sheets v. Allen, 8 Norris 50; Green on Partition, §§ 480, 485; Bronson v. Lane, 10 Norris 153.

We think Hague, the defendant, had under his lease, such

[Duke *v.* Hague.]

an interest or estate in the land in controversy, as would have entitled him to notice, had the land been divided by a suit in partition, and this amicable partition having taken place without notice to him, he is unaffected by it, and cannot be ousted of his possession of the three undivided fourths interest in the land in controversy, by an action of ejectment. It must be conceded under the decided cases, that judgment and mortgage creditors are bound by an amicable partition justly and fairly made, but such creditors have no indefeasible estate in the land divided, and if the division be fair and just they cannot be injured by it, but not so in case of a tenant under a lease for oil purposes. As between the parties to the arrangement it may be fair and reasonable, and yet by it the whole value of the tenant's estate may be swept from him.

In this case it may be admitted, that as between White and the Butterfields the division was fair, and that one fourth of the mill tract and improvements was worth as much as three fourths of two other tracts of equal size (but if the defendant be bound by the partition, he must take two alternate quarters of the mill tract, subject to the restriction in his lease which prohibits him from drilling upon the improved land, in lieu of three undivided fourth parts of two alternate quarters of each of three tracts, or in the proportion of the entirety of two acres for three undivided fourth parts of six acres, equal to one acre in lieu of two and one quarter acres), and if so bound in this case, he would be equally bound in any other in which the partition might be fair between the parties making it. It might have happened that the mill tract and improvements were worth three times as much as all the other lands, then as between White and the other reversioners a partition which would give the mill tract to the latter, and all the other lands to the former would be perfectly fair, then if the mill tract be all improved, the defendant would get nothing for his three undivided fourth parts of the "alternate quarters" of the tracts allotted to White. Suppose further, that the defendant had drilled many oil wells on one quarter of each of the tracts before the partition, and that the quarters upon which he had so drilled should be allotted to White, would the defendant be bound by such a division?

The property under the defendant's lease covered a large extent of territory. Suppose developments upon the land or outside of the land had demonstrated that a portion of it was extremely valuable for oil purposes, and another portion of it of no value for such purposes, and when such facts had been clearly demonstrated, could the owners of the fee by any arrangement fair as among themselves (and vastly to their mutual interest), turn the tenant away from that which was

valuable for the purpose for which he became the tenant to that portion of the land which for his purposes had no value? If the rule sought to be established by the able argument of the plaintiff's counsel be the correct one, then all this may occur, and will occur, and the tenant be powerless to avert it.

The court find in favor of the plaintiffs for the one undivided fourth part of the land described in the plaintiff's writ in this case, and in favor of the defendant for the undivided three fourths of the land described in the plaintiff's writ.

The plaintiffs submitted the following points:

2. A person owning an estate less than freehold in land is not entitled to notice of the partition of the land, or to be made a party to proceedings relative thereto in the courts, or deeds when made in that manner, as between the owners of the fee.

Answer. We answer this point by saying that a tenant under a lease for oil purposes has such an estate or interest in the land as entitles him to notice of an action of partition.

3. The lease from Butterfield and others to W. W. Hague, dated August 30th, 1877, vested in Hague no interest in the land therein described, or the oil thereunder which would entitle him to notice of or participation in partition proceedings between the owners of land in fee, whether by law or by voluntary deeds between themselves.

Answer. We negative this point.

4. The mortgage of Hill to Knowlton having become a lien by being recorded prior to the lease to Hague, the sale under proceedings upon said mortgage, vested a clear and unincumbered title to the land described in said mortgage, the undivided one fourth, free from the lease of Hague, in the sheriff's vendee and his assigns, and the partition subsequently made between White and his co-tenants vested in the former in severalty, the lands described in the deeds clear of the Hague lease.

Answer. We affirm the first proposition contained in this point. We negative the latter proposition contained in this point by saying that Hague, having no notice of the partition, he is unaffected by it, and his lease remains upon the undivided three fourths precisely as though the partition had not occurred.

Exceptions filed by the plaintiffs to the conclusions of law were dismissed by the court, and judgment was entered in accordance with the above decision. The plaintiffs thereupon took this writ of error, assigning as error the answers to their points as above, and the dismissal of their exceptions to the portions of the Judge's conclusions of law enclosed in brackets.

*Lindsey* and *Sherman* (*Johnson & Parmlee, Dinsmoor & Cable* with them) for the plaintiffs in error.—The instrument of writing under which Hague claims was not a lease of the land and did not constitute him a tenant for years. It was a mere license for a certain number of years to take oil from the land or at most a lease so restricted in its terms as to amount only to a license. It did not convey an estate in the land or the oil flowing therefrom but simply a restricted right to take it as a chattel; it therefore did not entitle Hague to any notice of proceedings in partition, whether such proceedings were amicable or by action at law: Funk *v*. Haldeman, 3 P. F. S. 229; Munroe *v*. Armstrong, 15 Norris 307; Brown *v*. Vandergrift, 30 P. F. S.142; Johnstown Iron Co. *v*. Cambria Iron Co., 8 Casey 241. But assuming that Hague was a lessee, and had an estate for years, yet under no construction of his agreement had he a freehold estate, and we contend that one who has not a freehold interest in land cannot be joined in an action of partition with the owners of the fee. He can take no share, and should not be joined, as he can take no part either for or against the proceedings: Mark *v*. Mark, 9 Watts 410; Long's Appeal, 27 P. F. S. 151; McKee *v*. Straub, 2 Binn. 1. The primary object of a partition is to divide the land into equal parts among the tenants in common. No one who can not take a purpart is a proper party. If not a proper party in legal proceedings, he would not be entitled to notice. Hence an amicable partition can be made without him.

The Act of 32 Henry VIII., Cap. 32, is said to be in force in Pennsylvania, and it is cited to show that all persons interested must have notice or else the proceedings do not affect them. But it does not define what the nature of that interest shall be. The decisions above referred to clearly state that a partition must be between the owners of the freehold. And that neither a tenant for a term of years, nor an executor, nor a widow of a deceased owner, nor a mortgage or judgment creditor, have such freehold or such an interest in the land as will entitle them to receive anything.

We further submit that even conceding that no partition could be made by the owners of a freehold to the injury of the tenant for years, yet as in this case no injury has been shown resulting to Hague from the amicable partition, the judgment should have been in favor of the plaintiffs for the entire tract of land described in the writ.

*Brown* and *Heydrick* (*Stone* with them) for the defendant in error.—Hague had an estate in the land covered by his lease; that estate was property and as such could not be taken from him without due process of law or without allow-

[Duke v. Hague.]

ing him a day in court. If this be not so, and his property can be taken from him by the secret agreement of others, it must be so by virtue of some statutory provision, for partition, except as between parceners, was unknown at common law. No such warrant has been shown. By the statutes of 31 Henry VIII., Cap. 1, and 32 Henry VIII., Cap. 32, the writ of partition is given to and against such persons only, as have a present right of possession, and it is further provided that the rights of all parties to the action of partition shall be carefully preserved, whether or not their estates are coterminous. Our own statutes are equally barren of warrant for the contention of the plaintiffs. They farther regulate the action of partition, and extend it to cases not provided for by the British statutes, but by no one of them is it provided that a suit may be maintained between the tenant in fee simple of an undivided part of land and the reversioner of the other undivided part, to the prejudice of the latter's tenant for years. On the contrary they carefully guard present interests. By the 9th section of the Act of 25th of April, 1850, P. L. 571, Purd. Dig. 1115, pl. 16, all parties in interest are required to be named in the writ, declaration and notices. And while the Act of 11th of April, 1835, P. L. 199, has no direct application to a case like the present, it may be cited as exhibiting the legislative regard for present interests not of inheritance. It gives the writ of partition in cases where there may be a life-estate in part or parts of the property, with remainders over in fee; provides that all persons interested shall be made parties; and carefully protects the rights of the tenant for life where it shall appear that he is entitled to the exclusive possession of any part of the premises. The statute of 32 Henry VIII., Cap. 32, was not called to the attention of the Judges who decided McKee v. Straub, 2 Binney 1. Mark v. Mark, 9 Watts 410, was well decided on other grounds: Bavington v. Clarke, 2 P. & W. 115, and the class of cases to which it belongs, are not analogous, as is shown in Long's Appeal, 27 P. F. S. 151 and Wright v. Vickers, 31 P. F. S. 122. In the absence of statutory warrant for the infliction of this hardship upon us we submit that it is not the law that these tenants in common can either by action at law or by amicable agreement divide the land to the prejudice and injury of our vested rights therein.

Mr. Justice TRUNKEY delivered the opinion of the court October 6th, 1884.

Clapp and others granted, demised and leased unto Hague " the exclusive right for the sole and only purpose of mining and excavating for petroleum, rock or carbon oil, all that

11 OUTERBRIDGE.—5.

Duke *v.* Hague.

certain tract of land," being one half of a large number of lots, the lessee " to have one half of the above lots in alternate quarters," and " to hold the said premises exclusively for the said purposes only," for the term of twenty years. The purpose of the lease is first named, but that the land is leased for that purpose is as plain as if the description of the land preceded the clause restricting its use. Following the description, it is stipulated that the lessee shall have alternate quarters, and hold the premises exclusively for said purpose. The lessors except out of the demise the improved land, and may use all the land for tillage and lumbering which is not necessary for mining or producing oil. A portion of the oil that may be produced is reserved as rent or royalty. Failure of the lessee to perform his covenants will avoid the lease. Notwithstanding these stipulations, the lessee is vested with an interest in the land : Chicago and Allegheny Oil and Mining Co. *v.* U. S. Petroleum Co., 57 Pa. St. 83. His interest is that of a tenant for years for the purpose of mining, he has an absolute right of possession of all the surface necessary, and no one else can rightfully take out oil during the term, save under him. The whole of the oil, or only a part, may be taken under the lease, but whatever shall be taken is of the substance of the realty. He is not an absolute owner of the whole of the oil as he would be were all the oil in place conveyed to him in fee.

Prior to the execution of the lease, one of the tenants in common had mortgaged his undivided one fourth of the lands, and subsequently said fourth was sold in satisfaction of the mortgage. By agreement the purchaser made partition with the other owners of the fee, acquiring thereby his part in severalty. It was competent for them with respect to their own interests to divide the land as they pleased, and they did. Two entire tracts were allotted to the purchaser, and the plaintiffs holding under him claim that said tracts are freed from the lease. It is not denied that the undivided one fourth of the tracts was so freed by the sheriff's sale, but the defendant insists that neither by action in partition without making him a party thereto, nor by agreement, can the owners in fee divide the land to his prejudice. His lease entitled him to alternate quarters of each tract, a right that has been impaired by reason of the lien that existed on the undivided fourth, but subsisting as to the other three fourths. If anything be needed to show how he is likely to be injured or how the value of his lease is probably lessened, by excluding him from the tracts now owned in fee and severalty by the plaintiffs, it may be found in the opinion of the learned judge of the common pleas.

[Duke v. Hague.]

Under the lease the defendant's right is an estate, not a lien. It is settled that a lien creditor of a tenant in common is not entitled to notice of partition, and if partition be fairly made, thereafter the lien shall be exclusively on the part allotted to the debtor. This is so with a mortgage, for though in form, a deed and clothing the mortgagee with some of the benefits of a purchaser, in other respects it is only a security for a debt: Long's Appeal, 77 Pa. St. 151. The security is as ample on a separate fourth part as on an undivided fourth, and a lien creditor is not prejudiced by an equal and just partition. But such partition might be made among the owners in fee, and the lessee of one of them be deprived of all future benefit from his lease, if he can be shifted to the part allotted to his lessor; as in case of the lease of a tract part of which is woodland, for residence and tillage, and the woodland alone be allotted to the lessor, the woodland being of equal value with the improved.

The term of a tenant for years may be so short, or his lease of such nature, that he has no real interest to protect in the partition. In equity when a lessee has a long term of years under a tenant in common of the freehold, he is entitled to partition against the other tenants in common, without bringing the reversioner of the share demanded before the court: 1 Daniel Ch. Pr. 257. Nor does it constitute any objection that the partition does not finally conclude the interests of all persons. Partition will be made among the parties before the court, who possess competent present interests, such as a tenant for life or years: 1 Story Eq. Jur. § 656. A partition by contract may be conscionable between the parties, and so unjust as to others that it ought not to affect them. Why should it be permitted that a landlord may agree with other tenants in common to a division prejudicial to his lessee so as to bind the lessee? When the other tenants in common have actual or constructive notice of the lease, it is inequitable that they should join in depriving the lessee of his rights, and no precedent has been cited sanctioning such proceeding. In this case White had express notice of the lease from the lessors, and after the partition said to Hague,—"You are now my lessee of tract No. 108, I would like to have operations commenced." But the plaintiffs purchased without other notice than that furnished by the record.

If it be that partition by contract has like effect as partition at law, a tenant for years who is not a party shall not be prejudiced. The statute of 32 Henry VIII., c. 32, enables tenants in common where one or some of them have an estate for life or years with other or others who have

an estate of inheritance or freehold, to have partition; and provides that no such partition or severance shall be prejudicial or hurtful to any person not a party to such partition. This statute is reported by the judges, and so published, to be in force in Pennsylvania. Any person, by its terms, may be a party who is entitled to partition. Partition is of right between tenants in common when some hold an estate for years and others a freehold estate, and no such person shall be prejudiced or hurt unless he be made a party. In support of the position that a person who has not a freehold interest in the land cannot be made a party in partition with the owners of the fee, the plaintiffs cite McKee *v.* Straub, 2 Binn. 1; Long's Appeal, 77 Pa. St. 151; and Mark *v.* Mark, 9 Watts 410. The last two cases are not in point. Mark *v.* Mark was decided on the ground that neither the widow nor the executors of a decedent, who was a tenant in common in his lifetime, had an estate in the land. Long's Appeal ruled that a mortgagee cannot be a party in partition of land owned by the mortgagor and others as a tenant in common, and that the lien of the mortgage attached to the part taken by the mortgagor in severalty. In McKee *v.* Straub the decision was put on two grounds; first, that the action had abated by the death of one of the parties; and second, that the tenants had not a freehold estate. The first was fatal. The second received very brief remark, and neither counsel nor court noted the statute of 32 H. VIII., c. 32. Had that statute been brought to the attention of the court, instead of others which did not touch the point, the reversal might have been on the first ground alone. Be that as it may, it seems clear that the statute was not considered and that misconstruction thereof is not demanded by the decision.

Judgment affirmed.