Wilson, Appellant, *v.* A. Cook Sons Co.

Argued October 1, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*A. A. Geary,* for appellant.—Dunham v. Kirkpatrick, 101 Pa. 36, rules that a reservation in a deed of "all minerals" does not include petroleum oil: Preston v. Oil Co., 238 Pa. 301.

Silver v. Bush, 213 Pa. 195, rules that the word "mineral" is not a term of art or trade, but of general language and presumably is intended in the ordinary popular sense which it bears among English-speaking people.

That all seated lands should be sold as unseated does not extend the unseated land laws to seated lands in general: Vandermark v. Phillips, 116 Pa. 199.

Unseated land may be assessed with taxes and sold in any name which sufficiently identifies it. It may be assessed and sold in the name of the real owner, or of the original warrantee, or it may be sold by any other description which fully and sufficiently identifies it: Holloway v. Jones, 143 Pa. 564.

It is a statutory prerequisite to the validity of a tax sale of seated land that there be a prior demand by the

collector for the payment of the taxes: Norris v. R. R., 218 Pa. 88; Davis v. Beers, 204 Pa. 288.

Seated land must be assessed in the name of the person who owns it: Norris v. R. R., 218 Pa. 88; Phila. v. Miller, 49 Pa. 440; Cunningham v. White, 2 Pa. Dist. R. 531.

Where there is a double assessment and taxes paid on one tract the other tract cannot be sold: Clapp v. Twp., 138 Pa. 35; Powell v. Lantzy, 173 Pa. 543; Hutchinson v. Kline, 199 Pa. 564; Brundred v. Egbert, 164 Pa. 615; Huss v. Jacobs, 210 Pa. 145; Phila. v. Miller, 49 Pa. 440.

A tax cannot be assessed where there is no value to assess.

Five years' limitation does not apply to an action of trespass for injury to lands: Trexler v. Africa, 33 Pa. Superior Ct. 395.

*Raymond E. Brown,* with him *H. M. Rimer,* for appellee.—It has been many times decided that oil and gas are minerals, though not commonly spoken of as such, and while in place are "part of the land": Kier v. Peterson, 41 Pa. 357, 362; Funk v. Haldeman, 53 Pa. 229, 249; Stoughton's App., 88 Pa. 198, 201; Marshall v. Mellon, 179 Pa. 371, 374; Chartiers Block Coal Co. v. Mellon, 152 Pa. 286; Hamilton v. Foster, 272 Pa. 95; Erie City v. Pub. Ser. Com., 278 Pa. 512; DeWitt's Est., 266 Pa. 548; Rockwell v. Warren Co., 228 Pa. 430.

There is not a scintilla of proof in the instant case that a demand was not made upon appellant, and, in the absence of such proof, it is presumed that the collector did all that was necessary in that respect: Houseman v. Nav. Co., 214 Pa. 552; Stark v. Shupp, 112 Pa. 395.

The presumption is that the assessor acted within the limits of his duty, and that the assessment was made against the owner of the property, and the assessment establishes a prima facie case of liability against the person in whose name the property is assessed, which

throws on him the burden of proving that the property did not belong to him at the time of the assessment: Emery Lumber Co. v. Sullivan Co., 28 Pa. Superior Ct. 451.

OPINION BY MR. JUSTICE FRAZER, November 25, 1929:

Plaintiff sued in trespass to recover from defendant damages for taking and removing natural gas from a tract of land in Jefferson County, comprising 279 acres. By agreement between the parties the case was tried without a jury. After hearing testimony, findings of fact and conclusions of law were filed by the court below and judgment entered for defendant; from that order plaintiff appealed. The controversy resolves itself into the validity of a sale for unpaid taxes assessed against the mineral estate in the land in dispute, reserved by plaintiff to himself.

Wilson, appellant, acquired in fee the entire tract in 1890 from the heirs of William H. Lowry, his grandfather. In the same year he conveyed the surface of the acreage to Shields Brothers, excepting and reserving to himself "from the operation of this grant all of the petroleum or crude oil and natural gas underlying said premises, with the right to operate for the same." In 1896 the mineral estate thus reserved was sold at a county treasurer's sale for unpaid taxes for the years 1892 and 1893. The purchaser, L. S. Short, received a treasurer's deed for the property, which he subsequently assigned to Albert Baur, who in 1901 conveyed the mineral estate thus acquired to defendant company, appellee here. In 1914, the latter drilled a well on the tract, procuring natural gas which it marketed. Plaintiff alleges an unlawful taking of such gas, and seeks to recover damages for the alleged trespass.

The controlling question is whether the treasurer's tax sale was valid. The trial court found it was, and we find nothing in the record warranting a disturbance of that conclusion.

Plaintiff's counsel disregard existing laws and our numerous decisions on the subject in contending the tax sale was not made in accordance with statutory provisions relative to such sales on unseated and seated land. No authority existed, except under local laws, for the sale of seated land for taxes previous to the Act of April 29, 1844, P. L. 501 (Erwin v. Helm, 13 S. & R. 151; Biddle v. Noble, 68 Pa. 279), which provided that "all real estate, on which personal property cannot be found to pay the taxes assessed thereon......shall be sold as unseated lands are now sold in satisfaction of the taxes due." The Act of April 3, 1804, 4 Sm. L. 202, providing that "no action for recovery of lands shall lie, unless the same be brought within five years after the sale thereof for taxes," applied, it is true, only to unseated land. But the Act of May 16, 1879, P. L. 55, carried this right to seated land, by providing that owners of seated land sold in satisfaction of taxes "shall have the right to redeem the same within the same time and in the same manner as if the real estate were unseated." Reliance upon the Act of June 1, 1915, P. L. 660, by the court below as authority for his conclusion in this phase of the case was immaterial inadvertence. That statute was of course not in existence at the time of the tax sale of the property here in controversy, but the Act of 1879 was, and the trial court also cited this act as an authority. It was undenied there was not on the land here in question personal property to pay the assessed taxes; the sale, as the court below found, was properly advertised, there was no irregularity in the assessment, and accordingly the mineral estate of plaintiff was liable for the charge: Kean v. Kinnear, 171 Pa. 639.

Plaintiff made no effort to redeem the land within the statutory time, and, through a period of twenty-five years, did nothing to assert his title. He now contends the assessment and sale of "minerals did not pass title to the oil and gas." On the tax duplicates and in the tax books of the county, plaintiff's reserved estate is de-

scribed as "mineral," and he argues this term so used "did not cover oil and gas" underlying the surface, and sets forth in his first assignment of error that the court was in error in its conclusion that the assessment of the "mineral" included the oil and gas and that the treasurer's sale passed to the purchaser and to his successors a good title to such property. We are uncertain from our study of the brief of counsel for appellant, whether it is admitted that the reservation in the deed from Wilson to Shields Brothers, by which they acquired the surface in the land in fee, created two separate and distinct estates, one in the purchasers and one in himself. But in view of existing laws and our numerous decisions on the subject, we need not at this late date enter into an explanatory consideration of that phase of the case. There was undoubtedly a separate estate here created in plaintiff of the underlying minerals, and we have frequently held that oil and gas are minerals (Marshall v. Mellon, 179 Pa. 371; Chartiers Block Coal Co. v. Mellon, 152 Pa. 286) ; and like all minerals, they necessarily belong to the owner of the fee or his grantee, the former having an ownership which he can sell and convey : Hamilton v. Foster, 272 Pa. 95. The reservation in the present case was distinct and comprehensive in its terms and plain as to intent. What we said in Rockwell v. Warren Co., 228 Pa. 430, 431, is conclusively appropriate to this controversy: "A mere license to mine coal or to drill for oil and gas, unaccompanied by the right of ownership in the minerals underlying the surface, does not constitute an estate in land. On the other hand, oil, gas and coal are minerals, and when the title to the same is severed from the owner of the surface and vested in a separate owner, an estate in land is thus created, which, if it be of any value, may be taxed. ...... It is just as well settled that each separate estate is subject to valuation and assessment as land" (See also DeWitt's Est., 266 Pa. 548) ; and where there is a divided ownership of the land there ought to be a divided

taxation: Logan v. Washington Co., 29 Pa. 373; Sanderson v. Scranton, 105 Pa. 469.

The contention is also advanced that the designation of the mineral estate was insufficient, that the assessment was not made in plaintiff's name and that he did not have notice. That the property was not assessed in his name was, as his evidence discloses, the result not only of his own neglect, but also of his own careful contrivance. Immediately following his conveyance in 1890 of the surface to Shields Brothers and plaintiff's reservation in the same deed of the underlying minerals, by plaintiff's personal direction the assessment, which at that time was against the Lowry Estate, was, as indicated in the notation on the tax duplicated for 1890, changed to "Shields Brothers per order of Harry R. Wilson." Whatever were the motives for this change, no proofs were produced to show that he had any arrangement with Shields Brothers to pay the tax on his mineral estate, and, so far as the record discloses, they never did pay it. For the years 1892 and 1893, the years of the unpaid taxes upon which the property was sold, we find the assessment to be against "Lowry, W. H. (Heirs) Mineral." Here certainly was a designation ample for the information of plaintiff. The word "mineral" was distinctly descriptive of the reserved estate, and no one better than plaintiff could know what land was meant when it was described as that of the Lowry heirs. He was the grandson of the Lowry, from whose heirs he purchased the entire property, and was of course thoroughly acquainted with its location. Nor was the designation less sufficient for the public in general. For upwards of fifty years, the property was known throughout the community as the "Lowry Land," "the Lowry Estate," and the fact, as the court found, that notice of the intended tax sale was properly advertised, furnished sufficient publicity. Appellant knew the land was subject to taxation and it was his duty to pay the charges assessed against it. The fact that he seems to have suc-

cessfully kept his name from the tax records as the owner of land in which he had valuable interest and on which, so far as the record discloses, he never paid the taxes, surely furnishes no ground for the belief that the description on the tax duplicates was foreign to his knowledge. The land was amply identified. There must of course be some element of identity in the assessment itself, leading to a knowledge of the land assessed,—a description of the land, or some circumstance, number or adjoiner, associated or connected with it, or a name connected at some time with a title to the land, good or bad: Bachop v. Critchlow, 142 Pa. 518, 526.

Nor is there anything to support the contention that plaintiff was under the impression at the time he made the reservation of the oil and gas that it was without value. A few years later he himself was interested in mineral leases in the neighborhood and the productivity of wells subsequently drilled near by, and later the success of the drilling on the land here in question, indicate that the reservation in 1890 was a wise forethought on the part of appellant; and the precise and affirmative terms of the reservation in the deed to Shields Brothers —"all of the petroleum or crude oil and natural gas underlying said premises"—do not indicate that the existence of the minerals there named, at the time of the reservation, was a matter of doubt in his mind. If he believed it had no value he could have protested to the county commissioners.

Further discussion of the questions involved is not required, except to express our accord with the finding of the court below that the verdict for plaintiff in the ejectment suit between him and the present owners of the land does not constitute a bar to or prejudice the right of defendant in the present action to set up its tax title. The verdict in that case was a compromise arrangement between the parties concerned, to which defendant here was not a party and in which suit he had no interest.

The following, said by this court in McCoy v. Michew, 7 W. & S. 386, 389, is applicable here: "And who are the persons who object to the proceedings? The landholder, whose duty it was in the year 1805 to furnish the commissioners the very information which would have prevented the alleged difficulty, but who, it appears, neglected it for upwards of thirty years, when knowing, or what is the same thing, bound to know, that his land was liable for its proportion of the public burden, neglects or refuses to pay the tax assessed, and suffers his land to be sold, and then, after this long neglect, when the land has risen in value, seeks to destroy a title which accrued in consequence of his failure to perform a duty which the law has imposed upon him."

The judgment of the court below is affirmed.