Baird's Appeal.

Argued April 27, 1938.

Before KELLER, P. J., CUNNING-

Ham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

Milford L. McBride, for appellant.

F. Harold Gates, County Solicitor, for appellee.

Opinion by Parker, J., September 28, 1938:

This is an appeal by W. L. Baird from a triennial assessment of oil and gas severed from the surface, as real estate, for the years 1937, 1938 and 1939, allowed by Section 519 of The General County Assessment Law, Act of May 22, 1933, P. L. 853 (72 PS §5020-519). The single assignment of error is to the order of a court of common pleas affirming the action of a board of county commissioners sitting as a board of tax revision. We believe the court below reached a correct conclusion, but we arrive at that result for different reasons than those relied upon by that court.

Section 518 of The General County Assessment Law, as amended by the Acts of July 12, 1935, P. L. 674 and July 15, 1935, P. L. 1007 (72 PS §5020-518) provides that the appeal from the board of revision shall be perfected by a petition of the complainant or his agent "setting forth the facts of the case." Such a petition was presented, the appeal was allowed and hearing was had, and thereupon the court below dismissed the petition and affirmed the order of the board. On hearing the

county proved the assessment as made and, relying on the presumption that it was correct, rested. Thereupon the petitioner, the appellant, made proof of such facts averred in the petition as he deemed necessary to sustain his position. The petition, after setting forth the facts, asked that the assessment made by the board of tax revision be reduced to one-eighth of $3,520 as made by that board, the said proportion being the proportion of oil reserved as a royalty in certain oil and gas leases on the premises.

We will outline the facts relied upon by the appellant. W. A. Baird, the father of W. L. Baird, and James M. Foster had been the owners in fee simple of 123 acres of land in Clinton Township, Venango County. From 1902 to 1904 the owners leased for oil and gas purposes 20 acres of this land to Harry and H. E. Hoffman (known as Hoffman Lease), 75 acres to F. W. Brown et al. (known as Baird Lease) and 28 acres to William Shaffer, later assigned to C. H. Hamilton et al. (known as Lucky Strike Lease). Each lease reserved to the grantors one-eighth of the oil to be delivered in the pipe line running the oil to the grantors' credit and provided for the payment of an annual money rental or return for any gas produced and utilized off the premises. The surface, so-called, of the land was conveyed to third parties not here involved as it was separately assessed. The entire oil and gas interest was assessed "Baird, W. A. Mineral right—115 acres. Valuation—$3520.00." The assessment was followed by a note describing the land by adjoinders and giving the daily production of oil. No proofs of the value of any of the individual interests involved were furnished by appellant. In fact he made no complaint as to the valuation of $3,520 as representing the value of the oil and gas interest in the entire 123 acres.

As we understand the contention of the appellant, it is that the interest assessed should be reduced by

assessing him under a separate assessment with the one-eighth of the oil and gas and that the valuation of the interest as assessed to him should be reduced to one-eighth of the valuation of the entire property, conceding that $3,520 represents a correct valuation of the oil and gas interest, leaving the remaining interest in the oil and gas to be assessed by other assessments to other owners.

Since the title to the oil and gas was severed from the remainder of the 123 acres of land by appellant's predecessors in title such interest is subject to a separate assessment and valuation as land. "Oil, gas and coal are minerals and when the title to the same is severed from the owner of the surface and is vested in a separate owner, an estate in land is thus created, which if it be of any value, may be taxed. ...... It is just as well settled that each separate estate is subject to valuation and assessment as land": *Rockwell v. Warren County*, 228 Pa. 430, 431, 77 A. 665. Also see *Wilson v. Cook Sons Co.*, 298 Pa. 85, 90, 148 A. 63; *Sanderson v. Scranton*, 105 Pa. 469. We are here concerned with the assessment of the oil and gas as a separate estate, but the appellant demands a further division of the assessment based not on a severed estate, but on a separate ownership in a distinct estate.

No sound reason has been suggested nor have we been able to find any statutory or other authority for such a multiplication of assessments as is here demanded by the appellant. Expressed in concrete and simple form the position of the appellant amounts to the assertion that if two or more persons are the owners of a fee simple, each may insist that his undivided interest be separately assessed. It has not been uncommon for an undivided interest in an oil lease to amount to less than 1/300th of the whole. While the relation of W. L. Baird to the owners of the working interests has some peculiar features, the respective interests of the

lessor and lessees comprise, on appellant's own theory, the whole assessable interest.

In the assessment of real estate for tax purposes the statute requires the enumeration of the individual parcels primarily liable for local taxes. Section 407 of the Tax Assessment Law (72 PS §5020-407 [c]) makes it the duty of the assessor to assess the taxable real estate in the name of the "then owner or owners". It does not require the separate assessment of each individual interest in such parcel for it would place an unreasonable burden on the taxing authorities to require assessments so to be made. The lessee, under some forms of oil leases, who has the exclusive possession of the land for the purpose of producing oil has more than a mere license in the land, and may recover from the lessor taxes on the land paid by him under compulsion, under the Act of April 3, 1804, P. L. 517, 4 Sm. L. 201, §6 (72 PS §5791): *Kitchen v. Smith,* 101 Pa. 452. See *Mansfield v. National Transit Co.,* 18 D. R. 694. In any event, the statute does not contemplate any such division.

In addition, there have been no proofs to indicate that the interest of W. L. Baird is only one-eighth of the oil and gas or what the value of such one-eighth would be. In other words, the royalties to be paid on account of the oil produced and reserved in the leases would not alone fix the relative interests or valuation. An eighth royalty in oil produced without expense to the lessor is certainly worth more than a corresponding proportion of the working interest which must bear all the expense of finding and producing the oil. The gas as well as the oil was reserved and is being assessed and the royalty reserved for gas sold was not one-eighth of the amount produced, but a money rental.

The proceedings before the court of common pleas were de novo and the county made out a prima facie case by offering in evidence the assessment of record

in the office of the county commissioners as approved by the board of revision: *Lehigh & Wilkes-Barre C. Co. Assmt.*, 225 Pa. 272, 276, 74 A. 65. No evidence to the contrary having been presented and the appellant having virtually conceded that he has a taxable interest, we are left without any proof as to the value of that interest. The assessment must therefore stand unless some other reason for a different conclusion appears.

The appellant cannot complain that other persons have not been joined with him as owners in this assessment of 115 acres as we have no evidence as to the valuation of the interests of such other persons and such persons are not parties to the present action. No one of the lessees was interested in the whole 123 acres, described as 115 acres in the assessment, and a lessee could not be charged as part owner in the whole tract when he was only interested in a portion thereof. Baird was the appellant and the burden was on him to overcome the correctness of the assessment. He failed to sustain that burden or the theory upon which the appeal was presented. This is accounted for by reason of the theory alleged in the pleadings and his proofs that he should be separately assessed with a portion of the oil and gas on the entire tract. He has failed to sustain his right to have his interest separately assessed and his appeal was therefore properly dismissed.

However, the appellant also takes the position that while he is willing to be assessed with the one-eighth of the oil and gas with a corresponding reduction in valuation, he has in fact no assessable or taxable interest in this land. The argument of the appellee is largely concerned in answering this latter contention. In reply the county contends that the owners of the leasehold have no interest that is assessable or taxable as real estate and the entire interest in oil and gas should be assessed to appellant. In view of the manner in which the question is raised we shall confine our at-

tention in examining it to a consideration of the question as to whether W. L. Baird had a taxable interest in real estate. The appellant under his pleadings and proofs has limited the inquiry to the assessment in so far as it affects him.

To answer this second contention of appellant it is necessary to examine various decisions of the appellate courts of this state dealing with the nature of the interests of both lessors and lessees of oil and gas leases and leases of other minerals, particularly coal, and then apply the principles gleaned from those cases to the particular leases involved here.

The three leases are so similar that reference to one of them will suffice. The Baird Lease was made October 26, 1903 and the lessor for a consideration of $1 "leased and granted" the exclusive right unto John A. Wiley et al., their heirs and assigns, to enter upon 75 acres, part of the 123 acres, "for the purpose of operating and drilling for petroleum and gas, to lay pipe lines, erect necessary buildings, release and subdivide" the same "for and during the term of Fifteen Years" from the date of the lease "and so long thereafter as oil or gas can be produced in paying quantities." The lessor was to have one-eighth of all the petroleum obtained from the premises "as produced in a crude state, the said one-eighth part of the petroleum to be set apart in the pipe line, running said petroleum, to the credit and for the benefit" of the lessor. The lessees were also given the privilege of using sufficient gas and water from the premises to operate the necessary machinery, and the right to remove machinery, fixtures and buildings placed on the premises by lessees. If gas was found in paying quantities, the consideration to the lessor was to be $100 per year from each well when the gas was utilized off the premises. The lessees agreed to pay seven-eighths of the increase in taxes caused by operations for oil and were required within a fixed period to

drill two new holes. The Hoffman lease did not contain any reference to taxes.

Since 1859, when oil in paying quantities was discovered in this state, there have been many and radical developments in the industry with corresponding changes in the contracts employed to define the respective rights of land owners and operators and the laws and decisions have kept pace with these advances. All these contracts are in common parlance referred to as leases. Many of the early contracts were mere licenses, some exclusive and others not so *(Funk v. Haldeman,* 53 Pa. 229). These were followed by contracts having many of the characteristics of ordinary leases, being in the form of a lease of the land for the purpose of operating for and producing oil and gas *(Duke v. Hague,* 107 Pa. 57; *Brown v. Beecher,* 120 Pa. 590, 15 A. 608). While the early leases were usually for fixed periods, frequently five to twenty years, as it was discovered that the oil could not often be exhausted in those periods these leases came to be drawn for fixed periods and as long thereafter as oil or gas was found in paying quantities. These were followed by grants of the oil for like periods with the same covenants as were found in an ordinary lease. Then there were absolute conveyances of oil and gas in fee simple without reservations or restrictions. When leases were made of land for a definite number of years for the purpose of exploring for and producing oil and a royalty was reserved to the lessor, the interest of the lessees was held to be an interest in land, a chattel real, "but none the less a chattel": *Brown v. Beecher,* supra (p. 603); *Titusville Novelty Iron Wks. App.,* 77 Pa. 103, 107. A mere license to remove the oil was held to be an incorporeal hereditament. In *Chicago & Allegheny O. & M. Co. v. U. S. Pet. Co.,* 57 Pa. 83, 90, Mr. Justice AGNEW in construing a lease of land for a definite period reserving a royalty of one-fourth of the oil produced said: "The

agreement ...... is manifestly a lease for years of the corporeal tenement." Also see *Kitchen v. Smith,* supra; *Duke v. Hague,* supra; *Brown v. Beecher,* supra.

In the case of *Barnsdall v. Bradford Gas Co.,* 225 Pa. 338, 74 A. 207, we have a situation where the lease was for present purposes identical with the leases here involved and that case is directly in point. Mr. Justice MESTREZAT there said: (p. 342) "The language of the agreement in the case at bar shows it to be a lease, conveying an interest in land, a corporeal and not an incorporeal hereditament ...... By the agreement the exclusive right to take and appropriate all the minerals is conveyed, and during the term of the lease the lessor has no right to enter and operate for oil or gas. The title to the oil *except the one-eighth thereof* is vested in the lessee, as is also the title to the gas and other minerals in the land." (Italics supplied.) The opinion also quotes with approval the statement of Mr. Justice TRUNKEY in *Duke v. Hague,* supra: "Notwithstanding these stipulations, the lessee is vested with an interest in the land ...... His interest is that of a tenant for years for the purpose of mining, he has an absolute right of possession of all the surface necessary, and no one else can rightfully take out oil during the term, save under him. The whole of the oil, or only a part, may be taken under the lease, but whatever shall be taken is of the substance of the realty. He is not an absolute owner of the whole of the oil as he would be were all the oil in place conveyed to him in fee."

The many cases which have considered the interest of lessees in oil and gas leases have arisen in the determination of various rights. In *Titusville Novelty Iron Wks. App.,* supra, it was held that an oil lease for a definite period was a chattel real and could be taken in execution and sold only as real estate. In *Duke v. Hague,* supra, it was held that a partition of real estate did not bind a lessee who was not made a party to the

partition. In *Stoughton's Appeal,* 88 Pa. 198, it was held that a guardian of a minor had not the power to make an oil lease for the period of twenty-one years except after proper approval of the orphans' court, as it was a grant of a part of the corpus. In *Kelly v. Keys,* 213 Pa. 295, 62 A. 911, and in *Barnsdall v. Bradford Gas Co.,* supra, the question involved was whether a lessee who had never entered into possession of the premises could maintain an action in ejectment to obtain possession. The Barnsdall case corrected an oversight in the Kelly case and in effect overruled the earlier case as a reference to the leases set forth in the paper books in those cases will show. In the earlier case the lease was treated as a mere license which was contrary to many previous decisions some of which we have cited and the court overlooked the fact that *Funk v. Haldeman,* supra, dealt with a mere license. See *Irwin v. Hoffman,* 319 Pa. 8, 179 A. 41.

While the cases to which we have referred dealt primarily with the estates taken by lessees and our present inquiry is as to the interest or estate of the lessor, the combined interests compose the whole title and the interests are complementary. It will be noted that Mr. Justice TRUNKEY, an eminent jurist and outstanding authority on interpretation of contracts dealing with oil rights, was careful to note that in a lease for a definite term the lessee "is not an absolute owner of the whole of the oil as he would be were all the oil in place conveyed to him in fee." In the Barnsdall case where the lease was "for a term of ten years, and as much longer as the premises were operated for oil or gas", similar to the provisions in the leases we are considering, the opinion again carefully stated: "The title to the oil *except the one-eighth thereof* is vested in the lessee ...... 'He is not an absolute owner of the whole of the oil, as he would be were all the oil in place conveyed to him in fee.' " (Italics supplied.)

In *Wettengel v. Gormley*, 160 Pa. 559, 28 A. 934, Gormley in one conveyance leased three contiguous farms. He had willed one of the farms to each of three sons. At the time of his death the main operations were on one farm. It was held that the devisees as owners of the respective farms were entitled to share the royalty on the whole in proportion to their respective acreages. In other words, the royalty was given to the successors in title to the interest of the lessor and not to the personal representatives of the testator. "If the lessor assign or convey the lease, or convey the fee in the leased premises, without reserving the right to the rent or royalty, then it will be payable to his assignee or grantee": 1 Thornton Law of Oil & Gas (4th Ed.) 689.

In leases of the nature we are considering the lessor has a greater interest in the oil than the right to receive the royalty for he has a right to receive a fixed proportion of the oil in kind as produced and the lease must be operated for the mutual benefit of the lessor and lessee. The lessee is bound to explore for and determine whether there is oil and gas in the land and if found in paying quantities to bring it to the surface. If the lessee fails to pursue his explorations or operations, he will be held to have abandoned the premises. When he abandons a given piece of land his rights therein are at an end and the right to the oil and gas reverts to the land owner: *Venture Oil Co. v. Fretts*, 152 Pa. 451, 457, 25 A. 732.

Owing to the marked differences in the nature of oil and gas and solid minerals such as coal, the rights of lessees in the respective minerals are not the same. Cf. *Lazarus's Est.*, 145 Pa. 1, 23 A. 372. Gas and oil leases are in a class by themselves. They bear scarcely any resemblance to a house or farm lease and they resemble only in part leases for solid minerals such as coal. "Gas, it is true, is a mineral; but it is a mineral with

peculiar attributes, which require the application of precedents arising out of ordinary mineral rights, with much more careful consideration of the principles involved than of the mere decisions": *Westmoreland etc. N. Gas Co. v. DeWitt,* 130 Pa. 235, 249, 18 A. 724. Also see *Brown v. Vandergrift,* 80 Pa. 142.

The caution suggested by Mr. Justice MITCHELL in *Denniston v. Haddock,* 200 Pa. 426, 50 A. 197 and repeated by Mr. Justice MAXEY in *Greek Catholic Cong. v. Wilson Coal Co.,* 329 Pa. 341, 345, 198 A. 841, must be observed. Rules applicable to a particular contract are not to be applied indiscriminately to all instruments whether they amount to a license, a lease, or conditional sale or absolute sale, and whether they concern solid minerals or minerals of the character of oil and gas.

We are of the opinion that the cases to which we have referred warrant the conclusion that W. L. Baird had an interest in the oil and gas when these assessments were made and that such interest was assessable to him. We hold that where a contract between an owner and an operator is in the form of a grant and lease of land with the exclusive right and for the purpose of drilling for and producing petroleum and gas for a definite term "and so long thereafter as oil or gas can be produced in paying quantities" and provides that one-eighth of the oil produced is to be delivered to the lessor in the pipe lines as produced, the right to receive that royalty is an incident to an estate in the oil and gas remaining in the grantor as an owner of land. When the grantor, after making such a contract, conveys or devises his interest in the oil or gas, the right to receive the royalty passes to the grantee or devisee when the conveyance or will becomes effective unless he expressly reserves such royalty.

In *Prager's Est.,* 74 Pa. Superior Ct. 592, the contract was held to be the equivalent of a sale of the oil and gas in place, the operative words being "grant and convey"

and the subject of the grant all the oil and gas, and was not a mere right to use the land for the purpose of removing the oil and gas. The three leases with which we are dealing were made prior to the Act of April 1, 1909, P. L. 91 (21 PS §2) and that act is therefore not applicable to these leases. Not only so, but in these three contracts the interests of the grantor are "limited to a lesser estate".

Lessees having estates of the character created by these leases frequently abandon the premises and title is then at an end and reverts to the lessor. The lessor may insist the land be operated for their mutual advantage. Such conditions are not an incident to an estate in fee simple held by a grantee.

We therefore hold that W. L. Baird did have an assessable interest in the oil and gas in and under the land in question. We do not intend to go any farther than the issue presented requires us to do. It may be that these lessees had likewise an interest in real estate that was assessable to them, but we are not passing on that question. Neither does this case decide who may be ultimately liable for all or part of the taxes. As a matter of fact, in two of the leases the parties have fixed their mutual responsibilities as to taxes by contract.

Order affirmed.